*419 By tlie Court,
Beatty, J.:
Most of the assignments of error of this case are based upon exceptions to the sufficiency of the indictment, and in order to pass them in review it will be most convenient to copy the indictment and the demurrer thereto. The indictment (omitting the heading) is as follows:
Defendant, Charles Harris, above named, is accused by the grand jury of the county of Humboldt, state of Nevada, of the crime of murder, committed as follows:
“The said Charles Harris, on the fourth day of July, A. D. 1877, or thereabouts, at the county of Humboldt, state of Nevada, without authority of law, and with malice aforethought, did shoot a person by the name of James Bandall with a pistol, and by the said shooting inflicted upon the head of the said James Bandall a mortal wound, from which said mortal wound the said James Bandall died on the eleventh day of July, A. D. 1877, or thereabouts, in said county. So the grand jury aforesaid do say, on their oaths, that the said Charles Harris did unlawfully, and with malice aforethought, kill the said James Bandall by shooting him with a pistol as aforesaid, at the place and in the manner aforesaid, contrary to the form of the stute [sic] in such ease made and provided, and against the peace and dignity of the state of Nevada. G. P. Harding, district attorney of Humboldt county, State of Nevada. By S. S. Grass, deputy district attorney of said county.”
Then follow the names of the witnesses examined before the grand jury. The indorsement is as follows:
“In District Court, Fourth Judicial District of the State oE Nevada. The State of Nevada v. Charles Harris. A true bill. James E. Sabine, foreman of the grand jury. Presented to the court by the foreman of the grand [sic] in the presence of the grand jury, and filed with the clerk of said court this eighteenth day of July, A. d. 1877. J. H. Job, clerk.”
To this indictment the following demurrer was interposed:
“Now comes said defendant and demurs to the indictment herein upon the grounds: First. The facts charged therein *420 clo not constitute a public offense; Second. It does not substantially conform to the requirements of sections 234 and 235 of tlie criminal practice act. In that part of tlie indictment which charges the shooting, the technical word assault is not used, and the offense is not substantially charged nor directly charged as in section 235, but argumentatively and inferentially alone. In the latter part of the indictment there is no direct charge of any offense, and no charge at all of any offense. The words used, to wit: ‘So the grand jury aforesaid do say,’ etc., is not sufficient to charge the defendant with any crime.
“Said indictment is a mongrel between a statutory and a common law indictment, and is not sufficient in form or substance for either. It nowhere alleges that the defendant did, without authority of law and with malice aforethought, kill the deceased, either in form or substance. Bonnifield & French, attorneys for defendant.”
It is only necessary to compare the indictment with sections 234, 235, 243 and 244 of the criminal practice act to see that the objections specified in the demurrer are utterly baseless and trivial. They have not been relied upon in the argument of this court, and we shall not notice them further. There are some objections to the indictment, however, Avhicli have been urged upon our attention by counsel, and those we will notice more particularly.
First. It is said that the indictment does not accuse the defendant of the commission of a felony. This objection has reference to section 235 of the criminal practice act, which prescribes the form in which an indictment may be substantially drawn. According to that form an indictment may commence, (after the title) “Defendant A. B. above named, is accused * * * of a felony,” or in a proper case “of the crime of murder.” The meaning of that provision is that such or any similar form of accusation may be employed. It may be general, “of a felony,” or specific, “of the crime of murder,” at the option of the pleader. This indictment is specific, and it is objected to because it is not general. Such an objection refutes itself.'
Second. It is said that the act complained of is not al *421 leged to have been “contrary to the form of the statute,” etc. This objection is based upon the misspelling of a word. Statute is spelled stute. If it was of the slightest consequence that the indictment in this ease should have concluded contra forman statuti, it would require no stretch of liberality to read statute where stute is written. But these words are of no consequence in an indictment for murder, which is a common law offense.
Third. It is objected that the indorsement on the back of the indictment does not show that it was presented to the court by the foreman of the grand jury. This objection also rests upon what is manifestly a mere clerical mistake — presented by the foreman of the grand — -omitting the word jury. The objection would have been without merit if it had been taken in time and in the proper manner. An objection that an indictment has not been found, indorsed or presented as prescribed by law must be taken by motion to set aside the indictment before pleading to it. (Sec. 275.) It is not a ground of demurrer. (Sec. 286.) Besides the only indorsement prescribed by law is that of the words, “A true bill,” to be signed by the foreman of the grand jury, and the names of the witnesses. (Secs. 226-229.) The indorsement usually made by the clerk as to the presentment, filing, etc., is not prescribed by law. It is useful and proper because it affords proof of those facts, but if accidentally omitted may be supplied at any time. In this case if the objection had been made at the proper time and the court had been of opinion that the clerk’s indorsement did not show a presentment by the foreman of the grand jury, the clerk would simply have been directed to amend his clerical mistake.
Fourth. It is objected that the indictment was never-signed by the district attorney. It is signed Harding, district attorney, by Grass, deputy.
Counsel contend that the district attorney has no authority to appoint a deputy. We are of a different opinion; but if Harding had no authority to appoint Grass his deputy with full powers, there is at least no doubt that he could authorize him to draw up an indictment and sign his name *422 to it; and this is all he appears to have done. It is contended that we must conclude that Grass also examined the witnesses before the grand jury. We cannot imagine upon what principle we ought so to conclude. The indictment does not allege it, and a demurrer merely admits facts alleged; it does not establish other facts. Besides, if wo did know that Grass was present in the grand jury room when this charge was being examined, and if we thought he had no right to be there, we should only say that the defendant waived the objection by not moving to set aside the indictment at the proper time. (Sec. 275.) It ought to be understood that there are some objections to an indictment that are not raised by a demurrer.
Finally, as the last of several complete answers to this objection, we are satisfied that the district attorneys have authority to appoint deputies. There were originally in the territory of Nevada three district attorneys, one for each judicial district. By the act of December 19, 1862, the office of prosecuting attorney (one for each county) was created and that of district attorney abolished. (Stats. 1861, p. 295; Stats. 1862, p. 54.) Prosecuting attorneys were the same thing as district attorneys, except that their authority was limited to their respective counties instead of being extended to all the counties of a district; their duties were precisely the same that had formerly belonged to the district attorneys. Prosecuting attorneys were expressly authorized to appoint deputies with power to transact all business pertaining to the office. (Stats. 1864, p. 143.) This act has never been expressly repealed, but it is claimed (hat the office of prosecuting attorney has been abolished. Wo do not think the office has been abolished. There is no act expressly abolishing it. The legislature has provided for the election of district attorneys — one for each county— and devolved upon them the duties of prosecuting attorneys. (C. L. Yol. 2, Sec. 2935, et seq.) All that has been done is to change the title of the office. If the district attorneys are not the same officers who Avere formerly called prosecuting attorneys, then the office of prosecuting attorney, as distinct from that of district attorney, still exists, for it has *423 never been abolished, except by creating the office of district attorney, and that would not abolish it if the office was a distinct one. We think district attorneys are prosecuting attorneys, with no change except in name, and we do not think a simple change of the title of the officer sufficient to repeal by implication the act empowering him to appoint a deputy.
This disposes of all the objections based upon the demurrer and relied upon in support of the motion in arrest of judgment.
The defendant also moved for a new trial upon two grounds —separation and misconduct of the jury and error in the instructions of the court.
The affidavits as to the first point show that while the jury was deliberating on its verdict, two of the jurors separated from the rest for the purpose of going to the water-closet. They were attended by one of the deputy sheriffs to the door of the court-house, within a few feet and within sight of the water-closet. During the time one of them remained inside a stranger entered the closet, and a few words of conversation, having no reference to the trial, ensued between him and the juror.
It may be that the fact that one of the jurors was where he could exchange a single word with the stranger without being overheard by the officer in charge is sufficient to establish a technical separation of the jury. We are inclined to think that it was, and we think the officer was to blame for permitting a stranger to have access to the juror out of his sight and hearing, and thus affording an opportunity, however slight, for tampering with or prejudicing him in respect to the case. This is a matter in respect to which officers cannot be too particular; for although it does not follow necessarily that a new trial must be granted whenever there has been a slight accidental separation of one juror from his fellows and from the officer in charge, under circumstances that admit of private communication between him and a stranger, still such things are highly improper and dangerous. The juror may be spoken to and improperly influenced. in regard to his verdict, and, even if nothing of the *424 kind happens, the state may not be able to show satisfactorily, as it would be bound to do, that in fact there has been no tampering with the juror and no misconduct upon his part. In this case the state did show to the satisfaction of the district judge, and to our complete satisfaction, that there was no tampering with, or misconduct on the part of the juror, the separation that occurred was therefore not a sufficient ground for granting a new trial. (State v. Jones, 7 Nev. 413; People v. Boggs, 20 Cal. 434; Carnaghan v. Ward, 8 Nev. 33.)
The instruction of the court which is complained of is a literal copy of the instruction, commencing with the words: “In dividing murder into two degrees,” 34 Cal. 213, and ending rvith tkeAvords: “Followed by the act of killing,” on page 215 of the same volume. That instruction Avas pronounced in that case (People v. Nichol) to be not even obnoxious to criticism. We think this is rather too high praise for the instruction, but Ave agree that it contains no substantial error. The criticism to Avhich Ave think it obnoxious is this: An intent to kill is not essential to the crime of murder in either degree. An involuntary killing is murder if committed in the prosecution of a felonious intent (C. L. vol. 1, sec. 2327); and if the felony intended is arson, rape, robbery or burglary, it is murder of the first degree. The legislature has not made the occasion of the killing in such cases conclusive evidence of premeditation, as the instruction declares. On the contrary, it makes the malice Avhich is implied from the circumstances of the killing, whether voluntary or not, to stand in the place of that express malice — the deliberate intention unlawfully to take away the life of a fellow creature — Avhich is, in all other cases, essential to the crime of murder in the first degree. The perpetration, or attempt to perpetrate one of the enumerated felonies, does not necessarily prove an intent to kill, deliberate or otherwise — it simply dispenses Avith the existence of an intent to kill, and makes the killing murder of the first degree Avithout regard to any intention to kill. The instruction, therefore, is obnoxious to criticism, though not erroneous in any sense that could have prejudiced this defendant; or, perhaps, in a sense that could ever prejudice *425 any defendant. It would be more likely in some eases, to prejudice tbe state to lay it down as a universal rule, that a deliberate intent to kill is absolutely essential to murder of tbe first degree in all cases.
Tbe judgment of tbe district court is affirmed.