# Reber *versus* Herring.

1. It is error to allow a hypothetical question which assumes a state of facts not warranted by the testimony either in words, or in substance, to be asked an expert witness.

2. Where the court below neglects to explain to the jury the precise question at issue and calls attention to the evidence of one side only, the judgment will be reversed, for such is not an adequate presentation of the case to the jury.

February 28th, 1887. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Berks county:* Of July Term 1885, No. 163.

Case by Peter Herring against Mayberry S. Reber, M. D., to recover damages for an alleged want of skill and care and for negligence and inattention as a physician in treating an ulcer of the plaintiff. Plea, not guilty.

The facts of the case as they appeared on the trial before HAGENMAN, J., sufficiently appear in the charge of the court and the opinion of the Supreme Court.

On the trial the plaintiff's counsel asked the following hypothetical questions:

Mr. Reber: Q. When a patient, suffering from a fracture in the lower part of the leg, in the month of May or June, has the foot of the injured limb encased in a tight stocking, covering the entire foot, excepting the sole, placed in a fracture box, with a cord fastened to both sides of the stocking at about the middle of the foot, with a weight attached to the other end of said cord, so as to keep the foot extended, the weight being a tin vessel containing about a quart of sand, and the entire leg in this condition, resting mainly upon its heel for several weeks without being changed, or receiving any care or other attention at the heel, what, under such cir-

cumstances and conditions, would likely be the effect upon the heel?

Mr. Jones: Objected to by the defendent, as a supposititious case, and not supported by the evidence in this case. Objection overruled. Exception for defendant. (First assignment of error.)

Mr. Reber: Q. If maggots form in the heel under such circumstances, does it not show that it is unskillful and improper treatment to permit them to remain and increase in number until a part of the heel, as large as a man's thumb, is destroyed by them?

Mr. Jones: Objected to, by the defendant, as a supposititious case, not based on the evidence in this case, and an impossible thing. Objection overruled. Exception for defendant. (Fourth assignment of error.)

In the general charge the court instructed the jury as follows:

This action was brought by Peter Herring against Dr. Mayberry S. Reber to recover damages for unskillful and careless treatment. The evidence discloses that on the 27th of May, 1882, the plaintiff was at Shoemakersville, and there, or near by, met with an accident in which his leg was badly broken between the knee and the ankle. He was taken to the house of his son, and was there treated by the defendant, Dr. Reber. The bones were properly set; and there is no allegation of want of skill or care in the setting and treating of the fractured bones.

After some considerable time, the heel seems to have become very sore, and sloughed away pretty largely, and maggots were breeded. About six weeks after the accident the plaintiff was brought to Reading, where he was treated by Dr. Sterly, and after remaining here for about eleven weeks, he went to Lehigh county, where he at present lives. He still suffers, and, from the evidence, probably will suffer from the injury which his heel sustained, either from the treatment, or from the accident which happened to him at Shoemakersville.

There is no dispute in the testimony that the heel became exceedingly sore, and that there was considerable sloughing away of the heel. The question in dispute is whether the treatment which the doctor gave the patient was proper,— was it that skill which a physician should bring to the care of his patient, or was it not? If it were not,—if the injury of which the plaintiff complains were caused by a want of skill, a want of care on the part of the physician, then the defendant would be liable to the plaintiff for such damages as the jury would find him under the circumstances entitled to. On the other hand, if proper care and proper skill were bestowed—such

as a physician should bring to the treatment of such a case—
then the plaintiff would not be entitled to recover.

There is no dispute between counsel as to what the law is
in a case of this kind. There is an implied contract of a sur-
geon or a physician who attends a patient, that he will use all
known and reasonable means to accomplish the object for
which he is called in to treat the patient; and that he will
attend his patient carefully and diligently. His relation to
his patient implies that he possesses, and will employ in the
treatment of the case, such reasonable skill and diligence as
are ordinarily exercised in his profession by a thoroughly
educated surgeon or physician. This is the rule of law. And
the question arises, did this defendant, when he was called in,
use that skill and diligence which he was required to use?
If he did, he is not responsible; if he did not, he is responsible.

The evidence of the plaintiff, who is an old gentleman, is
that Dr. Reber was called in to attend him; that he fixed up
his leg and put it in a box; that the doctor came nearly every
day; he worked around it; cannot say if he opened; was lying
on my back and in a few days it began to burn; told the
doctor, who then placed something under it, but think it was
too late; was sore; he got salve and some wash; he never
looked at it particularly; put salve on; it got very sore, and
maggots got in; had great pain, at times was not conscious;
I told him I had pain; he looked in, and rubbed salve on it;
told him how painful it was, a week or longer before it
opened; my daughter waited on me. The daughter he re-
ferred to more especially is Mrs. Eck. She came up to see her
father after this accident occurred, and was there on Decora-
tion Day, which was the following Tuesday after the accident
happened.

Mrs. Eck says she lived in Reading, and on Decoration Day,
the 30th of May (the accident happened on the 27th), they
put his leg in a box, on cotton, and the foot of the leg; they
cut off the foot of a stocking and then sewed it up; I told the
doctor that father wanted the box opened, he had so much
pain (this was subsequent to the time). But after this leg
was dressed and put in the box, several of the witnesses have
testified that there were supports from the ceiling down, hold-
ing the box up; and that there was an extension applied. In
other words, to this stocking which was around the foot there
were strips or bandages of some kind sewed fast, or were
around the foot, and there was a suspension of some kind
from the ceiling, to the end of which a box of sand was put.
Some of the witnesses speak of a tin can, containing about a
quart, and that it was full of sand. Mrs. Eck then speaks of
having gone up several times to see her father, and that while

she was there, after this stocking was fitted to the foot, it was
sewed up on both sides; and that this was never removed, as
far as she knows, until some four weeks after the accident
occurred. She says, I told the doctor that father wanted the
box opened, he had so much pain; doctor said it was rheuma-
tism at the time; the time he opened the box was four weeks
after the accident; father said, it was like crawling,—she used
the German word which no one here seemed to be able to
translate exactly, but the word crawling in English comes as
nearly in meaning to the German word as I can now think of,
[and when we opened the box the maggots began to roll out
of the heel, it was all slimy at the heel; I said, "Is this the
way my father is to be eaten up with worms?"]  (Fifth as-
signment of error.)

The doctor said he knew there was worms at it; two weeks
after, he was brought to my house, Reading; he was there
eleven weeks.

This testimony is offered on the part of the plaintiff to show
that there was want of care,—of that ordinary skill and care
which the doctor should have brought to his patient. These
witnesses, and one or two others, speak of the heel having
rested on the bottom of the box, or upon some hard substance.
[You have the testimony of the doctors who were examined
on the part of the plaintiff that if this heel had rested upon a
hard substance, such as these witnesses spoke of, that inflam-
mation would set in, and sloughing would follow; and that
this inflammation and sloughing followed in consequence of
the want of proper care and skill upon the part of the doctor.]
(Second assignment of error.)

[In the questions that were put to the physicians examined,
both on the part of the plaintiff and the defendant, in the
statement of the facts which were embraced within the ques-
tions, the doctors were asked whether that was evidence of want
of care, or whether it was not evidence of negligence. The doc-
tors said it was.]  (Third assignment of error.)

It is for the jury to say whether the evidence submitted
on the part of the plaintiff establishes the fact that there was
want of care, a want of skill upon the part of the defendant in
his treating of this patient.

The defendant takes the stand himself, and you have heard
what he says in regard to it; that he dressed the leg properly;
that he removed the bandages every day, and washed the parts;
that is, washed the leg, and washed it down over the heel. He
does not remember whether there was a stocking or whether
there were bandages around the foot. He says, however,
whatever was there was removed by him, and that he washed
the leg and the heel.

You have the testimony of Charles Herring, the son of the plaintiff, and at whose house the plaintiff was, and he gives us the same statement whilst he was there.  He says that the heel as well as the leg rested upon a cushion or some soft substance.

Then Mrs. Herring is called, and she says much the same thing.  She was there, and helped to attend and nurse the old gentleman, and attended with the doctor to the dressing of the limb.  She says that the limb was opened every day, and the bandages taken off; that the leg was washed and the heel was washed.  Her attendance took in the first three weeks. During the fourth week, it seems, the daughters of the plaintiff were called together—they were probably nearly all there during that week—the old gentleman's condition being regarded as serious, and that he was likely to die. . During that week, on the Saturday of which Mrs. Eck says she insisted on having the leg opened, and that if the doctor would not open it himself she would.  Mrs. Herring was herself indisposed. But on the day it was opened, although she was about, she says she only saw after it was opened that there were some maggots on the pillow.

Then Sallie Herring was examined.  She is the daughter of Charles Herring, and was not at home much of the time, and did not see much; but what she saw is of the same character as was testified to by her father and mother.

After that testimony was in, there were certain inquiries made of the doctors, and certain statements of facts were embraced within the questions, and the doctors, one and all, said if such were the treatment it was done with skill and with care.  It will be for the jury, therefore, to say whether the facts which were embraced in the questions submitted by the plaintiff, or whether those embraced in the questions put to the doctors by the defendant, are the true facts of the case. It is for the jury to say what the facts of the case are.  It is for you to say whether, from all this evidence, there is want of proper care and skill upon the part of the physician.  If there were, he would be liable.

We have been asked to say to the jury that, even if there were not that proper care and skill upon the part of the doctor, that, if the plaintiff contributed to the injury which he complains of, he cannot recover.  That is the law.  Although one person may sustain an injury by the negligence of another, yet, if he contributes to the injury which he receives, he is not entitled to damages.  When a physician or surgeon takes the charge of a patient, he assumes an implied obligation to treat the case with reasonable diligence, carefulness and skill. It is, however, the duty of the patient to submit to the treat-

[Reber *v.* Herring.]

ment prescribed, and to follow the directions given, provided that they be such as a physician of ordinary skill would adopt or sanction. So that, when Dr. Reber attended to the patient, if his treatment were skillful, it was the duty of the patient to submit to his treatment. And, although the doctor may have been negligent himself, if the plaintiff contributes to the injury which he complains of, he would not be entitled to recover.

The jury will, therefore, first of all, inquire whether there were or were not that proper, ordinary diligence, care and skill exercised by Dr. Reber which he, as a physician, was required to bring to the care of his patient. If there were, then the plaintiff is not entitled to recover. But if the jury find, with the instructions I have given in regard to contributory negligence, that, without any fault of the plaintiff himself, he suffered this injury from a want of that care, that skill, which the physician should have given to his patient, then he would be entitled to recover damages.

And then you will come to the question as to what are the damages he is entitled to recover. In estimating damages, the jury should allow not only for the direct expenses incurred by the plaintiff by reason of the injury, but also for the privation and inconvenience he is subjected to, and for the pain and suffering, bodily and mental, already experienced and likely to be experienced, as well as for the pecuniary loss he has sustained and is likely to sustain during the remainder of his life from the disabled condition of his heel. And in addition to what I have stated, the plaintiff would be entitled to such damages as would result from the loss of his earning power occasioned by the accident. In estimating the damages, the jury will take into account the age of the plaintiff. He is eighty odd years old. You will take everything into consideration which I have laid down to you, and which are embraced within the rules of law laid down to us, and you will return such a verdict as, in your judgment, the plaintiff is entitled to recover.

But always, as I said before, if you find that he is entitled to recover. If you find that there were that proper skill and care exercised by Dr. Reber, and that this injury, although it came upon the plaintiff, did not result from the want of care and skill upon the part of the defendant, your verdict will be otherwise.

Verdict for the plaintiff in the sum of $900, and judgment thereon, whereupon the defendant took this writ and filed the following in addition to the foregoing assignments of error:

The court, having been requested to say to the jury in the general charge that, if contributory negligence were shown, the plaintiff could not recover, erred in not referring to the

evidence of contributory negligence, to wit: The application of wet cloths to the heel in disobedience of the doctor's express orders, and the removal of the patient from the doctor's care against his protest while the ulcer was apparently healing. (Sixth assignment of error.)

The court erred in presenting to the jury, in the charge, only so much of the testimony as assumed that the ulcer was caused by pressure on the heel during treatment, and in omitting all reference to the testimony of the physicians that such ulcers frequently occur in aged people without apparent cause or from the slightest scratch or abrasion of the skin. (Seventh assignment of error.)

*Richmond L. Jones* (*Adam H. Schmehl* with him) for plaintiff in error.

*Henry C. G. Reber* (*Jeremiah K. Grant* with him), for defendant in error.

Mr. Justice GREEN delivered the opinion of the court March 28th, 1887.

This was an action of case against a physician for negligence in the treatment of a fractured leg. The plaintiff, who was about eighty years of age, sustained a compound comminuted fracture of both bones of his leg between the ankle and knee. No complaint is made of the treatment of the fracture, as the plaintiff was entirely cured in that respect and in the usual time. The broken bones were re-united, the leg was straight and of the same length as the other one. It was admitted that the defendant treated the fracture with care, skill and entire success. This element of the treatment is therefore entirely out of the case. The claim for damages is based only upon an allegation of negligence in the treatment of an ulcer which developed upon the plaintiff's heel and resulted in a sloughing of the flesh which was not cured by the defendant and occasioned pain and suffering to the plaintiff. The plaintiff was taken away from the treatment of the defendant by his daughter, Mrs. Eck, about six weeks after the accident, and was subsequently treated for about eleven weeks for the ulcer in the heel, apparently with indifferent success. Whether he would have recovered from the ulcer if he had remained under the defendant's treatment cannot be known, because the ulcers only broke out in the third week, and the plaintiff was taken from the defendant's care at the end of the sixth week. This, of course, produces an element of uncertainty in the plaintiff's case since it becomes complicated with the question as to whose treatment, if any, was at fault for the non-recovery of the ulcer

in the heel. It was entirely undisputed that several ulcers broke out on the leg and heel of the plaintiff, but those on the leg appear to have recovered under the treatment of Dr. Reber, the defendant, and the only one as to which complaint is made is the one on the heel. It was testified by all the physicians, including those called by the plaintiff, that ulcers are of common occurrence in persons of extreme old age, often without any apparent cause. Thus, Dr. Loose, one of the plaintiff's medical witnesses, testified : " Ulcers are common occurrences in people of extreme old age without apparent cause; the ulcers we find usually in aged people are caused by stagnation of the blood ; in aged people the valves of the superficial veins are apt to give out, and the blood, instead of going vigorously, stagnates and produces varicose veins, and these produce ulcerations. In a vitiated condition of the blood a scratch may make a very bad ulcer." Dr. Cleaser, another of plaintiff's experts, testified : " In extreme old age ulcers not unfrequently develop without any apparent cause; the cause may be in the blood itself, so that an ulcer may be developed without a bruise. If it is attributable to any particular cause, when you remove the cause the ulcer will heal."

Dr. Sterly, who treated the plaintiff next after the defendant, being called by the plaintiff, said : " Sometimes the least irritation or pressure upon certain parts—especially the lower limbs—will produce ulceration in aged people, and sometimes ulcers will form or develop themselves, you might say spontaneously, without any apparent cause, arising from mere poverty or depravity of the blood; not depravity so much as a want of vital power ; and ulcers formed from such constitutional cause are likely to continue and resist efforts to heal, and are described as indolent ulcers ; you find them frequently in aged people."

The defendant and all his medical witnesses testified to the same effect, and it was an entirely undisputed fact that in aged persons ulcers are developed by very slight causes, and frequently by no apparent cause, in which case they are attributable to low vitality and poverty of the blood.

In addition to this, the defendant and his medical witnesses all testified that wet applications upon the parts affected would so soften and shrivel the skin as to produce ulcers, and it was also proved both by the defendant and the persons attending the plaintiff, that wet applications were made to the plaintiff's heel repeatedly by the direct command of the plaintiff, and against the remonstrance of the defendant. The defendant alleged that in this respect the plaintiff was guilty of contributory negligence.

In this condition of the testimony it is evident that the case

should have been presented to the jury upon the question as to the cause of the ulcer in the heel and the character and effect of its treatment by the defendant. The jury should have been told by the court that under the testimony there were several different possible causes for the ulcer, to wit: 1. Extreme old age and poverty of the blood. 2. Irritation or pressure upon the heel. 3. Wet applications upon the heel. · 4. A low state of vitality in the patient. For the first, third and fourth of these causes the defendant would not be responsible. For the second he would be ·responsible if he negligently and improperly applied undue pressure to the heel. This should have been carefully explained to the jury, and their attention should have been called to the evidence on both sides relating to this subject. Having read the whole of the testimony with the closest care, I am constrained to say that the great preponderance of the evidence is to the effect that no such pressure was applied. Then the jury should have been distinctly charged that if the plaintiff were himself guilty of contributory negligence in producing the ulcer he could not recover.

It was not enough merely to state this as a general proposition—the meaning of contributory negligence should have been explained to the jury, as it related to this particular case, and they should have been told that the defendant alleged and gave evidence to prove· that the plaintiff had himself given directions to have wet applications made to his heel, and that if these produced or tended to produce the ulcer, he was guilty of contributory negligence and could not recover. As the testimony given by the defendant on this subject was not con-. tradicted, but was strongly corroborated by the testimony of other witnesses, its force was greatly enhanced and the attention of the jury should have been called to this aspect of the case. From whatever cause the ulcer was produced the attention of the jury should have been directed to the treatment administered by the defendant. Was it proper and skillful, · or improper and negligent, and if so, in what respect? The doctors do not seem to have differed as to what would be the correct treatment, and the question would be whether that kind of treatment was administered. For if it were the defendant would not be responsible if the plaintiff did not recover. Doctors are not required to insure the recovery of their patients, but' only to treat them with adequate care and skill.

These views indicate what, as it seems to us, was the proper manner of presenting this case to the jury. An examination of the charge compels us to say that it was not so presented in any respect.

On the subject of contributory negligence no explanation of

its meaning was given, and not the slightest allusion was made to the large amount and uncontradicted character of the evidence tending to show such negligence. This was misleading and, therefore, error. Nor was the precise question at issue at all explained to the jury. That question was : How was the ulcer on the heel produced? Was it by natural causes, such as the great age of the plaintiff, the stagnant or impoverished condition of his blood, or a low state of vitality pervading his system? Or was it the result of any possible bruise received at the time of the accident, and not externally manifest? Or was it produced by an undue pressure upon the heel, applied by the negligent conduct of the defendant? In this latter case only would the defendant be responsible for the fact of the ulcer, and the jury should have been so instructed, but were not. Then the character of the treatment administered should have been presented. Was it such as was usually given by physicians of competent skill and care ? Or was it unskillful, inadequate and negligent? Attention should have been called to the evidence not upon one side only, but upon both sides of this question. We think the charge is justly subject to unfavorable criticism upon all these points, so much so that we cannot regard it as an adequate presentation of the case to the jury, and must therefore treat it as erroneous.

On the trial exception was taken to the allowance of a hypothetical question, put to the physicians by plaintiff's counsel, on the ground that it assumed a state of facts not proved in the testimony. The part of the question objected to is thus expressed : "And the entire leg in this condition, resting mainly upon its heel for several weeks without being changed or receiving any care or any other attention at the heel, what, under such circumstances and conditions, would likely be the effect upon the heel?" A careful examination of the testimony compels us to say there is no evidence which supports this hypothesis. It includes the idea that for several weeks the heel received no care or attention, and to that no witness testifies. The plaintiff says that in a few days after the accident the heel pained him and he complained of it to the defendant, who placed something under it and got some salve or wash which he applied. Mrs. Eck did not see her father until the fourth day after the accident, and during the first four weeks, the period covered by the question, she was only at the house part of the time ; and both her testimony and that of the other persons relied upon by plaintiff on this subject, was merely negative and goes for nothing against the positive testimony of the defendant and of the plaintiff's son, Charles Herring, and his wife and daughter, who were present all the time and personally attended the plaintiff, and testified to the

[Reber v. Herring.]

constant treatment of the heel as well as the leg by the defendant. The question also assumes that the leg was "resting mainly upon its heel for several weeks without being changed." This also is an unproved fact. The plaintiff did say that he laid on his back with the heel resting on the board pretty hard and in a few days it began to burn and hurt. But he also says he informed the doctor of it and the doctor put something under it and got some salve and rubbed the heel with it a number of times. He does not say the leg continued to rest on the heel for several weeks, and his own witnesses prove the contrary. Mrs. Eck says, "The leg was resting in the box, but the whole heel you could see below the box and the bottom of the foot." Dr. Sterly said that when he saw the plaintiff on May 31st "the fracture-box did not reach the heel, and the heel was resting upon a pillow." The defendant and his witnesses all said the heel was resting on a pillow or on cotton. Mrs. Charles Herring, plaintiff's daughter-in-law, said the doctor "put a cushion in the box, fixed it and put the leg in, but not so that the heel rested;" that the doctor "came every day, opened the leg every day and looked after it and washed it, put a new bandage around it and put it in the box again. . . . . . He washed the leg from the fracture down to the heel and washed the heel also." She also said the heel did not rest on a board. There was much other testimony to the same effect which it is not necessary to repeat. But it is very clear that the assumptions upon this subject contained in the hypothetical question we are considering, are not proved by any testimony, either in words on in substance, and this assignment of error is therefore sustained.

The language of the charge covered by the second assignment is still more objectionable. None of the doctors said "that the inflammation and sloughing followed in consequence of the want of proper care and skill upon the part of the doctor," yet the court distinctly charged the jury that they did so testify. In such circumstances such charging is the gravest error.

The language covered by the third assignment is ambiguous, because it implies that the testimony of the *defendant's* physicians, in answer to the defendant's hypothetical questions, proved that, upon the facts there stated, there was evidence of negligence and want of care. Of course, this was not so, and the learned judge probably did not so intend, but the words he used are liable to that construction, and are therefore misleading. The hypothetical question complained of in the fourth assignment was a very exaggerated presentment of the testimony of one witness, Mrs. Eck, contradicted by every other witness in the case, as to the number of maggots that

[Reber *v.* Herring.]

were seen, yet, as she did use language of such a character, we could hardly reverse on the ground that there was no supporting testimony at all. It was certainly not an impartial presentment of the testimony in relation to the maggots, to repeat to the jury the highly sensational exclamation of Mrs. Eck in regard to her father being eaten up with worms, without also stating that the other witnesses testified to a far less number than she did; and in this respect the charge was misleading, and the fifth assignment is sustained. The sixth and seventh assignments are both sustained, for the reason heretofore stated. It was most clearly proved, and not at all contradicted, that the plaintiff insisted upon having wet applications made to his heel, and that it was done solely at his instance and against the positive instructions of the defend-. ant. Yet no allusion was made to this testimony in the charge, nor was it in any manner explained to the jury that such conduct on the part of the plaintiff would, if believed by the jury, constitute or tend to prove contributory negligence. A mere statement of the general doctrine as to the effect of contributory negligence, without any application of it to the facts of this case, was of no moment at all, and might as well have been omitted entirely.

We are also of opinion that undue prominence was given to the subject of the maggots—all the physicians concurred in saying that they were of very common occurrence, that they were the result and not the cause of the ulcer, and that they are easily removed. The defendant and Mrs. Charles Herring said there were very few of them, and that they were removed at once. They also testified that when the plaintiff was taken away from Charles Herring's house the ulcer on the heel was already healing, and that the defendant protested against such removal, and declared that he would not be answerable for the consequences. The attention of the jury should have been specifically called to this testimony and to its effect upon the plaintiff's case if believed. If it were true, it is difficult to see how the plaintiff had any case. At his great age, with so severe and complicated a fracture entirely cured, as is expressly admitted, with several ulcers which the age, or the low vitality, or the impoverished blood of the plaintiff might easily and naturally produce, all healed, and with only one remaining ulcer, and that fairly recovering, if the defendant's testimony is credited, there would seem to be no cause of action against the plaintiff. We are unable to discover any evidence in the record that the treatment actually administered by the defendant, either to the fracture or the ulcers, was negligent or unskillful, while, on the contrary, there is abundant and uncontradicted testimony that, so far as the ulcer on the heel

is concerned, the plaintiff was guilty of contributory negligence.                                        Judgment reversed.