[No. 1632.]

# THE STATE OF NEVADA, RESPONDENT, *v*. ADAMO BURALLI, APPELLANT.

INDICTMENT — SUFFICIENCY — JUDICIAL NOTICE—EXCUSING JUROR—EVIDENCE—
HARMLESS ERROR—INSTRUCTIONS—WEIGHT OF EVIDENCE.

1. Under a statute creating Lyon county, where the words "Lyon county" are used in the title, preamble, and indorsement of an indictment, and in the charging part the defendant is accused by the grand jury of the "county of Lyon," and the offense is alleged to have been committed at the town of Dayton, in the "county of Lyon," *Held* sufficient.
2. A defective description of the grand jury in the body of the indictment may be cured by the title and preamble.
3. Courts will take judicial knowledge of the fact that a town fixed by statute as a county seat is located in the county.
4. If such an indictment were deficient at common law, it would be good under the wise and liberal provisions of our criminal practice act.
5. If the trial court is in doubt as to the qualification of a juror, it is not error to excuse him; and it is better to do so, to the end that a fair and free jury may be obtained, and the risk, trouble, and expense of a new trial avoided.
6. If conceded that a question was improper, to which an objection was overruled, the error is presumed to be harmless, unless the answer by physical illustration is shown by the record to have been detrimental to the party making the objection.
7. A surgeon who has held an autopsy may give his opinion regarding the course of the bullet, and incidentally as to the relative position of the parties at the time the fatal shot was fired.
8. Instructions (*a*) may be refused when the legal propositions they contain are substantially embodied in the charge given by the court. (*b*) Must not assume facts not admitted. (*c*) Should not be argumentative. (*d*) The court having charged the jury to carefully consider all the facts, circumstances and evidence, the refusal of instructions singling out, and laying stress upon, particular points in the testimony, was not error.
9. The jury are the judges of the testimony, and the verdict will not be disturbed if there is any substantial evidence to support it.

(Syllabus by the Judge.)

APPEAL from the District Court of the First Judicial District of the State of Nevada, Lyon County; *C. E. Mack*, Judge.

Adamo Buralli was convicted of murder in the first degree, and he appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*F. M. Huffaker*, for Appellant:

I. The fourth assignment of error, to wit: "The court erred in overruling defendant's demurrer and motion before

plea to set aside the indictment," we will first consider. These objections were to the sufficiency of the indictment, because it appears from the charging part of said indictment that the grand jury presenting same was not of the body of any county known to the laws of the State of Nevada, and the venue was laid in no county of the State of Nevada. If this be true, we contend the court erred in refusing to set aside the indictment. We take it to be axiomatic that, in criminal cases, the state must allege every element of the crime of murder and that nothing in this behalf can be presumed against a defendant. The "venue" is just as essential as "malice prepense." Hence, if this indictment shows no county known to the laws of the State of Nevada, it·is fatally defective. A county of a state is such, and such only, as the legislature of the state designates, and is only known in law as designated for this purpose. The legislature of this state passed an act entitled "An act to create counties and establish the boundaries thereof," approved November 25, 1861, the fifth section of which says "There shall be a county, to be known as Lyon county." Then Lyon county is a county of the State of Nevada, and there can be a grand jury of Lyon county, and a crime can be committed in Lyon county, and an indictment saying the grand jury of Lyon county accused A. B. of the crime of murder committed in Lyon county would be according to law, and is not defendant entitled to have the state proceed against him according to law, and in no other way? This indictment says: "Adamo Buralli is accused by the grand jury of the county of Lyon, etc., etc., at the town of Dayton in the county of Lyon, etc., etc." There being no such county in this state as the "county of Lyon," the venue is laid in no county, and the grand jury is of no county known to the laws of this state, and can any presumption of this sort be indulged in a capital case? A county is a municipal corporation, and as such stands before the law, and in civil matters must sue and be sued by its corporate name, and certainly no less can be charged in an indictment. Will any one contend that a suit can be maintained by the "county of Lyon"? There is a name of no plaintiff, and, as this court has said, "The very first step towards the commencement of

an action or proceeding is the filing of a complaint in which it is indispensable that there be shown a plaintiff and a defendant, and without which it is an absolute nullity and renders void all subsequent proceedings had under it." (*Mexican Mill* v. *Yellow Jacket Mining Co.*, 4 Nev. 40.) Applying this to an indictment, must it not show that the grand jury is of a legal county, and that the crime was committed in such county? If it, as this indictment alleges, was no county for either, is it not a nullity? I do not find that this particular question has heretofore been raised in this state, and am therefore unable to find any adjudication of this court of this question, but if, as it must in a civil case on objection, a complaint that the plaintiff, the "county of Lyon," go out of Court, is the rule less strict regarding an indictment?

II.   The first assignment of error is to the action of the court in excusing juror Andrew Johnson against defendant's objection, while being examined on his *voir dire*. This juror during his examination had expressed a desire not to be a juror in a capital case, as he preferred not to convict a man of a capital offense, but said if he were a juror and the evidence warranted it, he would find such a verdict; that he has no scruples against capital punishment, and knew nothing of the case at hand. This is the purport of his examination, and, on objection or challenge by the state, the court excused the juror, to which action of the court the defendant excepted because the witness showed himself to be what, in law, is known as an impartial, unbiased juror.

III.   The court erred in denying defendant's motion in arrest of judgment, and for a new trial, which motion was based substantially upon the same grounds as those contained in the demurrer and motion to quash the indictment.

IV.   The court erred in overruling defendant's objection to a question asked Dr. Dempsey by the state to give his opinion as to the position of the parties at the time the shot was fired, from his examination of the wound, which objection was on the ground that it called for an opinion merely, and not for a fact, which is not permissible in a criminal case of a capital character where every essential fact must be established by the state, and the motion for a new trial was

on the ground that the verdict is contrary to the evidence and the law, and, further, the error of the court in refusing to instruct the jury as requested by the defendant.

V.   The position of the court and counsel for the state and myself, regarding instructing the jury, was, they contended, that the court, having instructed the jury as to the statutory definitions of murder in the first and second degrees and manslaughter, it was all the court was required to do, and that it was unnecessary to give any special instructions at the request of defendant, while my position was, and is, that a defendant is entitled under our laws to have the jury instructed upon any features of the case, and, if warranted, to give such instructions as may modify the general statutory instructions.

VI.   The defendant contends that, as matter of law, there must be some overt act or words at the time clearly indicative of a present purpose to do the injury; the defendant must show that he was actually assailed, or was at the time menaced by the deceased in such manner as to induce him as a reasonable person to believe that he was in danger of his life or of receiving great bodily harm. (*State* v. *Stewart*, 9 Nev. 130.)

VII.   The defendant contends that, as matter of law, under the evidence, his offense is not murder in the first degree, and therefore that the verdict against him is contrary to both law and evidence.

VIII.   There being no question that the deceased provoked the quarrel in the saloon, why did the parties, during the quarrel, leave the saloon? If it were upon a challenge to go out and fight, as the record seems to indicate, and the deceased voluntarily assaulted the defendant, the most that could be said is that the killing occurred upon a sudden encounter and, as put by Lord Hale, 1 Hale, 453, "It will be but manslaughter." This being true at common law, has our statute changed it? If not, the verdict is clearly contrary to law. (Frost, 138, 296, with reference to which it is said: "It is to be supposed, with regard to sudden encounters, that, when they are begun, the blood, previously too much heated, kindles afresh at every pass or blow, therefore the law, in consideration of the infirmities of the flesh and

blood, has extenuated the offense." Wharton on Homicide, 2d ed. 363.)

*James G. Sweeney,* Attorney-General, *John Lothrop,* District Attorney, and *James D. Torreyson,* for the State.

By the Court, TALBOT, J.:

The defendant was tried, convicted of murder in the first degree, and sentenced to be hanged, under the following indictment:

"In the District Court of the First Judicial District of the State of Nevada, Lyon County. United States of America. State of Nevada, County of Lyon. The State of Nevada, Plaintiff, against Adamo Buralli, Defendant. At a term of said district court held at the courthouse in the town of Dayton, Lyon county, State of Nevada, on the thirteenth day of November, A. D. one thousand nine hundred and two, and continuing in session at the time of finding this indictment. Present, the Honorable C. E. Mack, District Judge. Adamo Buralli is accused by the grand jury of the county of Lyon, State of Nevada, by this indictment, of the crime of murder, committed as follows, to wit: That the said Adamo Buralli on or about the third day of November, A. D. one thousand nine hundred and two, and before the finding of this indictment, at the town of Dayton, in the county of Lyon, State of Nevada, without authority of law, and with malice aforethought, he, the said Adamo Buralli, being then and there armed with a deadly weapon, to wit, a pistol loaded with powder and leaden bullets, did then and there, without authority of law, and with malice aforethought, kill one Angelo Zari, a human being, by shooting him, the said Angelo Zari, with said pistol, contrary to the form, force, and effect of the statute in such case made and provided, and against the peace and dignity of the people of the State of Nevada. John Lothrop, District Attorney in and for Lyon County, State of Nevada."

Indorsed:

"In the District Court of the First Judicial District of the State of Nevada, Lyon County. The State of Nevada, Plaintiff, against Adamo Buralli, Defendant. Indictment

for Murder. A true bill. G. B. Waldo, Foreman of the Grand Jury. John Lothrop, District Attorney, Lyon County, Nevada.

"Presented by the foreman of the grand jury, in its presence, in open court, and filed therein, this 13th day of November, A. D. 1902. D. W. Melarkey, Clerk of said Court."

Upon the arraignment the accused demurred and moved to set aside the indictment on the ground that it laid no venue, and charged no offense within any county known to the laws of this state. The action of the court in overruling these objections is alleged as error, and on this appeal it is further contended that the indictment is not shown to have been found by the grand jury of any county created by our statutes. If not too late, under *State* v. *Roderigas*, 7 Nev. 328, and *State* v. *Harris*, 12 Nev. 419, to raise this point after demurrer and trial, we do not consider it as well taken, for reasons hereafter stated in regard to the venue, and because, as held in a number of decisions, proper caption, title, or preamble may aid a defective description of the grand jury in the charging part of· the indictment. ( *Commonwealth* v. *Edwards*, 4 Gray, 1; *Jeffries* v. *Commonwealth*, 12 Allen, 145; *Commonwealth* v. *Fisher*, 7 Gray, 492; *Sargent* v. *State* (Tex. Cr. App.) 33 S. W. 364; *Helt* v. *State*, 52 Ark. 281, 12 S. W. 566.)

A grand jury in regular organization and attendance upon a court is necessarily one within and for the county where the court is in session, and, where the county and court have been properly described in the title, indictments have been sustained without the name of the county being stated in describing the grand jury in the body of the instrument. (*State* v. *Kiger*, 4 Ind. 621; *State* v. *Brady*, 14 Vt. 355; *Morgan* v. *State*, 19 Ala. 556; *Leonardo* v. *Territory*, 1 N. M. 293; *Stevens* v. *State*, 76 Ga. 97.)

In the last case an indictment headed "Georgia, Liberty County," was held to show that the grand jurors were drawn and sworn in that county. In Missouri, where the caption was omitted, it was held sufficient if it appeared from the record that the indictment was properly preferred by a lawful grand jury to a court having jurisdiction over the matter.

(*State* v. *Blakely*, 83 Mo. 360; *State* v. *Freeman*, 21 Mo. 481; *State* v. *Daniels*, 66 Mo. 192.)

The contention here is that the act of November 25, 1861, states that "there shall be a county, to be known as Lyon county," and that it is fatal to describe it in the indictment as the "county of Lyon," when it is not so designated in the statute. In the title, commencement, and indorsement, "Lyon county" is named, and the indictment is shown to have been presented by a grand jury in the district court of that county. The defendant and any person of ordinary understanding ought to know what is intended by either of these designations, and that the purpose of the allegation was to place the venue and grand jury in that county, and no other. Lawyers, in drawing deeds, affidavits, or any paper in a civil or criminal case, would be likely to name the county in either of these ways. Section 5, art. VI, of our state constitution, which temporarily divided the state into districts, provided that the "county of Lyon" should constitute the third; and the act of the legislature (Stats. 1861; p. 291, sec. 14) fixing the county seat at Dayton named it in the same manner; and, if these objections are well taken, by analogy there is legally no county seat. A verdict entitled in the proper court and case, as this indictment is, would be sufficient if it stated that "we, the jury, find the defendant guilty"; and it would be presumed, or in case of attack could be shown by the minutes and records of the court, that they had been properly drawn, selected, and sworn in the action specified in the title.

The objection is technical, at best, and the substantial rights of the defendant are not affected. In describing the place or jurisdiction, no necessity appears for the same accuracy that some decisions require in naming a private corporation as a party plaintiff or defendant. In *Woodsides* v. *State*, 2 How. 656, it was urged that it was not shown where the indictment was found, nor where the jury was impaneled. The court held that these particulars were set out with sufficient certainty, and sustained the indictment, because it recited: "The State of Mississippi, Wilkinson County—ss. The Circuit Court of Wilkinson County. The grand jurors of the State of Mississippi, impaneled and

sworn, in and for the county of Wilkerson and State of Mississippi." If the county were improperly described or omitted, the allegation that the defendant killed the deceased at the town of Dayton, in the State of Nevada, would fix the venue. Courts take judicial knowledge of the division of the state into counties, and of the location of important towns therein, designated by statute, as this is, for the county seat. (*State* v. *Laffer*, 36 Iowa, 422; *Long* v. *State*, 1 Tex. App. 422; *Lewis* v. *State* (Tex. Cr. App.) 24 S. W. 903; *Overton* v. *State*, 60 Ala. 73; *People* v. *Etting*, 99 Cal. 577, 34 Pac. 237; *State* v. *Powers*, 25 Conn. 48; *Huston* v. *People*, 53 Ill. App. 501; *State* v. *Reader*, 60 Iowa, 527, 15 N. W. 423; *People* v. *Telford*, 56 Mich. 541, 23 N. W. 213; *State* v. *Pennington*, 124 Mo. 388, 27 S. W. 1106; *People* v. *Curley*, 99 Mich. 238, 58 N. W. 68; *Martin* v. *Martin*, 51 Me. 366; *Commonwealth* v. *Desmond*, 103 Mass. 445; *Steinmetz* v. *Turnpike Co.*, 57 Ind. 457; 1 Greenleaf, Ev. sec. 6.)

In naming the grand jury as of the county of Lyon, this indictment follows the form prescribed by our criminal practice act. It is also provided in the Compiled Laws:

"SEC. 4199. The indictment shall contain the title of the action, specifying the name of the court to which the indictment is presented, and the names of the parties; a statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

"SEC. 4208. The indictment shall be sufficient, if it can be understood therefrom: First—That it is entitled in a court having authority to receive it, though the name of the court be not accurately set forth. Second—That it was found by a grand jury of the district in which the court was held. That the offense was committed at some place within the jurisdiction of the court.

"SEC. 4209. No indictment shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon, be affected, by reason of any defect or imperfection in matters of form, which shall not tend to the prejudice of the defendant.

"SEC. 4210. Neither presumption of law, nor matters of

which judicial notice is taken, need be stated in an indictment."

If the indictment were not sufficient at common law these statutory provisions would control, and cure the slight irregularities to which objection is urged. As said in *State* v. *Collyer*, 17 Nev. 286, 30 Pac. 891, the ancient rules relative to the strictness to be observed in the language of indictments have been superseded by the wise and liberal provisions of the Codes. (*State* v. *Millain*, 3 Nev. 465, and cases cited.)

During the impaneling of the jury one Andrew Johnson was drawn and examined on his *voir dire*, and, in answer to questions by defendant, said he knew nothing of the facts of the case, and had not formed or expressed any opinion, when he was passed by the defendant. The state then asked him if he had any conscientious scruples against inflicting the death penalty. He replied that he preferred not to sit as a juror, as he would hate to vote for the death penalty, but, if the evidence warranted such a verdict, he could vote for it. The court asked him if he had any conscientious scruples against capital punishment. He replied that he had not, but that he preferred not to vote for it, and this was the only reason he had for not wishing to sit as a juror. Thereupon the state challenged the juror upon the ground that, from the condition of his mind as disclosed by his answer, it would be at a disadvantage if he were retained. The defendant traversed, and the court sustained the challenge. At the time the jury was completed and sworn, the defendant had several peremptory challenges remaining. As held in *State* v. *Kelly*, 1 Nev. 226, and *State* v. *Larkin*, 11 Nev. 315, he is not entitled, as a matter of right, and for reversal, to have any particular juror retained, and the allowing of challenges for implied bias is not subject to review. If the trial court is in doubt as to his qualifications it is better to excuse him, whether the condition of his mind seems to lead him to favor the defendant or the state, and regardless of by whom he is challenged, to the end that a perfectly free and fair jury may be obtained, and the risk, trouble, and expense of a new trial avoided.

We quote the record in relation to an exception taken by the defendant to the overruling of an objection to a question asked Dr. Dempsey, a regularly licensed and practicing physician and surgeon, who had made an autopsy on the remains of the deceased, and had described the wound, and how the bullet had first pierced the arm close to the attachment of the biceps muscle, entered the right lung, cut the aorta, swung backward, went into the left lung, and struck the fifth rib and clavicle:

"Question by General Torreyson, for the state: Where would, in your judgment, from the course of that bullet, the defendant, or, rather, the party, who fired that bullet, be?

"Mr. Huffaker: I object to the question on the ground that it calls for the opinion of the witness, and not a fact. It is not proper to state conclusions, but only facts, in matters of that kind. Rulings have been recently made that you cannot call for opinions with reference to the position of parties, but simply state facts as you know them.

"Mr. Torreyson: My recollection is that, where a physician has made an examination as to the course of the bullet, that he may testify, in his judgment, as to whether that bullet came from a person holding a position lower or higher than the deceased, or on a level with the deceased. Perhaps the coat is a silent witness enough to show where it was. I simply want to show where the bullet struck.

"The Court: I think the question is proper.

"Defendant excepts.

"Q. I will ask you, from the course of the bullet, and the examination you made of the body, and the post mortem examination, and from all the evidence and the other circumstances, if you have any doubt what was the position of the deceased at the time the shot was fired?

"The Court: You mean relative to the person firing the shot?

"Mr. Torreyson: Relative to the person firing the shot? A. No. (Witness illustrates the position of the deceased and the person firing the shot.)"

It appears that the first question stated (being the one to which exception is taken) was not answered until after another had been asked without objection, and was not

answered then unless the physical illustration, given more directly to the last question, be deemed an answer; and, if so, such illustration is not shown to have been in any way detrimental to the defendant. He and witnesses on his behalf testified that the deceased struck him, and was about to strike him again when he fired the fatal shot. If the position the doctor assumed before the jury corroborated this theory, it was beneficial to the defendant; and if it indicated that he was to the side or back of the deceased when he fired, or that Zari had his hands down at that time, it is incumbent upon the defendant to have these facts appear in the statement on appeal, and to show that some injury came to him from allowing the question, if it were in fact an improper one. He has no ground for complaint if no answer was given to the question, or if the answer corroborated his own testimony. However, if the doctor illustrated the positions of the parties in such a way as to contradict the theory of the defense, it was permissible to have him, as the surgeon who had made the autopsy, give his opinion regarding the course of the bullet, which was the material point, and incidentally concerning the relative positions of the parties at the time the shot was fired, as a conclusion based on his scientific knowledge as applied to the appearance of the wound.

It is generally held that physicians may give their opinion as to the cause, effect, and consequences of wounds, the course of the bullet, and the distance from which the shot was fired. (Lawson's Expert & Opinion Ev. 108.)  See *Long* v. *Travellers' Ins. Co.* (Iowa) 85 N. W. 24.

In *Commonwealth* v. *Piper*, 120 Mass. 190, and *People* v. *Schmidt*, 168 N. Y. 578, 61 N. E. 907, medical experts were allowed to testify that the injury could not have been produced by a single blow.

On a trial for murder (*Davis* v. *State*, 39 Md. 355) it was held proper to ask a physician whether, from "the nature of the wound and fracture, such wound and fracture could have been, or were likely to have been, inflicted by the deceased accidentally falling into a sink"; and in *Commonwealth* v. *Lenox*, 3 Brewst. 249, a surgeon was allowed to testify as to whether, if the deceased had been in a stooping position at

the time he was struck, the bullet would have taken the course it did.

The court gave the jury a long and able charge, fully defining murder in the different degrees, manslaughter, justifiable homicide, the ingredients of self-defense, reasonable doubt, the effect of intoxication, the credibility to which witnesses are entitled, and the various verdicts which they might find under the different conclusions that could be drawn from the evidence. In part, they were told: "If you believe from the evidence, and from all the facts and circumstances in the case, that the defendant had reasonable ground for apprehending a design to do him great bodily harm by the deceased, and that there was reasonable ground for believing the danger imminent that such design would be accomplished, and he acted upon such appearances, and killed Angelo Zari to save his own life or to save himself from receiving great bodily harm, the killing would be self-defense. * * * If, upon a review of the testimony, there is a reasonable doubt remaining as to the guilt of defendant, he is entitled to the benefit of such a doubt by an acquittal. * * * You are made the sole judges of the testimony and the weight to be given to the same, and you must therefrom determine all questions of fact involved. It is your province to award such credence and weight to the statements of the various witnesses as, in your judgment, they may be entitled to. In determining the credibility of the witnesses examined, it is your right to take into consideration their interest or feeling in the result of the subject-matter, their appearance or deportment while being examined, the possibility or probability of the truth of their statements, as compared with other testimony given or facts established, and their opportunities for observation or knowledge of the matters to which they testify, their friendly or unfriendly feelings toward either side, how far they might have been contradicted, etc. It is a general principle of law that, if a witness has willfully sworn falsely with respect to a material matter, you are at liberty to disregard the testimony of such witness. * * * You must consider all the evidence in connection with the law as given you, and therefrom reach a decision. In doing so, you must consider, without fear,

favor, or affection, bias or prejudice, or sympathy, compare, weigh, and consider all the facts and circumstances shown by the evidence, with the sole, fixed, and steadfast purpose of doing equal and exact justice between the State of Nevada and the defendant at the bar."

The instructions quoted are examples of the manner in which the charge covered the other points of law applicable to the case.

It is claimed that the district judge erred in refusing certain instructions offered by the defendant, of which the following are illustrative: "First—Gentlemen, the defendant claims in this case that the killing of Zari on the evening of November 3d was justifiable; that at the time he fired the fatal shot he, in good faith, honestly believed that he was in imminent danger of loss of life or great bodily harm; and it is for you, gentlemen of the jury, to carefully consider all the evidence, facts and circumstances of the case as proven before you as to this contention of defendant, and if, therefrom, you have a reasonable doubt as to whether the killing was justifiable or not, the defendant is entitled to the benefit of that doubt, by an acquittal.    Second—It appears from the evidence:    That on the evening of November 3, 1902, defendant and deceased were in the saloon of Bonassi.    That the deceased voluntarily approached defendant while talking to another person, and demanded of defendant that he pay for a horse.    The conversation became quite animated, the defendant being the sole person to whom deceased was talking.    Deceased during the quarrel threatened to break the neck of defendant, and, if he were not ashamed, he would slap defendant's face.    And there was sworn evidence that, prior to the shot, deceased assaulted defendant and struck him with his fist; that at the time defendant was disabled in his right arm, and had so been for several years.    All these are matters to be considered by you in determining whether the killing was justifiable or not.    Refused.    In conflict with section 12, art. VI, Constitution of State of Nevada.    C. E. Mack, District Judge."

Defendant's fourth instruction defined "manslaughter," and stated that, if the jury arrived at certain conclusions, they should find him guilty of that crime, unless they believed

that the killing was in necessary self-defense, in which event they should find him not guilty. These matters, and the legal principles embraced in the sixth and seventh instructions, were covered by the charge of the court.

Defendant's fifth instruction—a long one—specified certain circumstances and a train of facts for the consideration of the jury.

Taking the refused instructions together, they were all open to one or more objections. They repeated propositions of law given by the district judge, or assumed facts, or were argumentative, or laid special stress upon particular circumstances.

A defendant is entitled to have instructions given to the jury embodying every legal principle applicable to his case, but not necessarily in any particular language. The tendency of courts is to give too many instructions.

It has often been held proper for the court to refuse instructions if they are given in substance in its charge, and the judgment will not be reversed for such refusal when it appears from the record that the law of the case has been laid down properly and fairly by the trial judge. (*State* v. *Ward*, 19 Nev. 306, 10 Pac. 133; *State* v. *Cardelli*, 19 Nev. 330, 10 Pac. 433; *State* v. *O'Connor*, 11 Nev. 416; *State* v. *Anderson*, 4 Nev. 265; *State* v. *Millain*, 3 Nev. 409; *State* v. *Rover*, 13 Nev. 17; *State* v. *McLane*, 15 Nev. 345; *Thompson* v. *Powning*, 15 Nev. 195; *State* v. *St. Clair*, 16 Nev. 207; *State* v. *Waterman*, 1 Nev. 543; *State* v. *Reno* (Kan.) 21 Pac. 803; *People* v. *Chadwick* (Utah) 25 Pac. 737; *People* *McCoy* (Cal.) 12 Pac. 212; *U. S.* v. *Camp* (Idaho) 10 Pac. 226; *State* v. *Frederich* (Wash.) 30 Pac. 328; *Richardson* v. *Hoyt*, 60 Iowa, 68, 14 N. W. 122; *Mo. Pac. Ry. Co.* v. *Christman*, 65 Tex. 369; *Wannack* v. *Mayor*, 53 Ga. 162; *Thompson* v. *Hovey*, 43 Ill. 198; *Com.* v. *Farrell*, 160 Mass. 525, 36 N. E. 475; Abbott's Trial Brief (Crim.) 615, note 8, citing many cases; *State* v. *Maher*, 25 Nev. 470, 62 Pac. 236.)

It is also well settled that under article VI, section 12, of our constitution, and in many states having similar provisions, an instruction which assumes facts in dispute, or that are not admitted, is erroneous. This does not interfere with the right of the court during the trial to state the testimony

or what a witness said, without assuming whether it is true; leaving the jury to draw its own inference as to what it establishes.   (2 Thompson on Trials, secs. 2280-1-2; *State* v. *Harkin*, 7 Nev. 377; *State* v. *Tickel*, 13 Nev. 503; *State* v. *Warren*, 18 Nev. 459, 5 Pac. 134; *State* v. *Duffy*, 6 Nev. 138; *State* v. *Ah Tong*, 7 Nev. 148; *Gerhauser* v. *Ins. Co.*, 7 Nev. 175; *State* v. *McGinnis*, 5 Nev. 338; *Tognini* v. *Kyle*, 17 Nev. 217, 30 Pac. 829, 45 Am. Rep. 442.)

It is also the rule that instructions argumentative in their nature should be refused.   (2 Thompson on Trials, sec. 2301; *People* v. *McNamara*, 94 Cal. 509, 29 Pac. 953; Sackett's Instructions to Juries, 2d ed.; *Jones* v. *R. R. Co.*, 107 Ala. 400, 18 South. 30; *Morris* v. *Lachman*, 68 Cal. 112, 8 Pac. 799; *Hays* v. *Gainesville St. R. Co.*, 70 Tex. 602, 8 S. W. 491, 8 Am. St. Rep. 624; *Teague* v. *Lindsey*, 106 Ala. 266, 17 South. 538; *Kirk* v. *Wolff Man. Co.*, 118 Ill. 567, 8 N. E. 815; *Hayes* v. *State*, 58 Ga. 35; *Merritt* v. *Merritt*, 20 Ill. 65; *Am. B. Soc.* v. *Price*, 115 Ill. 623, 5 N. E. 126.)

Nor is the court required to lay stress on particular points in the testimony, when, as in this case, the jury has been told to carefully consider all the facts and evidence.

It may be well to allow the trial judge some latitude and discretion about calling their attention to important or obscure matters, but, if it were incumbent upon the court to specify and direct them to consider every detail or fact that the attorney might wish to insert, it would result in giving undue prominence to parts of the testimony, and in loading instructions with much that ought to be left to the argument of counsel.   In this particular the refused instructions were not upon the law of the case, but upon the inference to be drawn from the evidence, and this was a matter peculiarly within the province of the jury.   The defendant could not properly embody in an instruction a part of the circumstances, isolate them from all the other facts, and demand that the court instruct the jury as to the weight to be given them, independently of all the other proof in the case.   (*Coffin* v. *U. S.*, 162 U. S. 664, 16 Sup. Ct. 943, 40 L. Ed. 1109; *People* v. *Dixon*, 94 Cal. 256, 29 Pac. 504; *People* v. *Demousset* (Cal.) 12 Pac. 789; Sackett's Instructions to Juries, (2d ed.) secs. 12, 13, 14; *Evans* v.

*George,* 80 Ill. 54; *Calef* v. *Thomas,* 81 Ill. 479; *Cushman* v. *Cogswell,* 86 Ill. 62; *Chesney* v. *Meadows,* 90 Ill. 431; *Graves* v. *Colwell,* 90 Ill. 612; *Ins. Co.* v. *Earle,* 33 Mich. 146; *Chase* v. *Buhl Ironworks,* 55 Mich. 139, 20 N. W. 827; *Jones* v. *Jones,* 57 Mo. 141; *Campbell* v. *People,* 109 Ill. 566, 50 Am. Rep. 621; *Wachstetter* v. *State,* 99 Ind. 290, 50 Am. Rep. 94; *Goodwin* v. *State,* 96 Ind. 550; *Fine* v. *St. Louis Pub. Schools,* 39 Mo. 67; *Benson* v. *State* (Tex. Cr. App.) 69 S. W. 166; *Drainage Commons* v. *Ill. Cen. R. R.,* 158 Ill. 353, 41 N. E. 1073; *Hickory* v. *U. S.,* 160 U. S. 408, 16 Sup. Ct. 327, 40 L. Ed. 474; *Gross* v. *Schaffer,* 29 Kan. 442; *Reber* v. *Herring,* 115 Pa. 599, 8 Atl. 830; *Webb* v. *Lees,* 149 Pa. 15, 24 Atl. 169; *Reed* v. *Reed,* 56 Vt. 492; *N. Y. R. Co.* v. *Thomas,* 92 Va. 606, 24 S. E. 264; *Duncan* v. *Freeman,* 109 Ala. 186, 19 South. 433; 2 Thompson on Trials, sec. 2330.)

The court's charge, directing the jury to consider all the facts and circumstances, was broad enough to include these matters detailed in the defendant's instructions.

In Thompson on Trials, vol. 2, sec. 2330, a number of cases are cited in support of the statement in the text that instructions should not be so drawn as to direct the attention of the jury to prominent features in the testimony on one side of the case, while sinking out of view or passing lightly over portions of the evidence on the other side which deserve equal attention.

Defendant further contends that the judgment ought to be reversed because it is not supported by the evidence. Several of his witnesses gave testimony which by itself would reduce the offense, but that on the part of the state is sufficient to sustain the judgment. This court has repeatedly held that it will not disturb the verdict if there is any substantial evidence to support it.

We find no error in the record prejudicial to the defendant. The judgment and order denying the motion for a new trial are affirmed, and the district court is directed to fix a time for having its sentence carried into effect by the warden of the state prison, to whom the sheriff will be ordered to deliver the defendant.

BELKNAP, C. J., and FITZGERALD, J., concur.