[No. 1027.]

## THE STATE OF NEVADA, RESPONDENT, *v.* JOSE LOPEZ, APPELLANT.

CRIMINAL LAW—CONSTRUCTION OF STATUTE—JURY TO VIEW PREMISES—DUTY OF JURY.—In construing the provisions of sections 377 and 378 of the criminal practice act, authorizing the court to allow the jury to view the premises where the offense is charged to have been committed: *Held,* that the order of the court should specify the place to be inspected, and should designate some person who knows the place, to point it out to the

jury. The person so designated, and none other, except the officer in charge, should conduct the jury to the spot, and should leave them to make their own observations, without any comment or explanation whatever.

IDEM—RECEIVING EVIDENCE OUT OF COURT.—When the jury arrived at the premises, they found a person who had never been sworn, as a witness, in the case. This person, in response to questions addressed him by members of the jury, pointed out to the jury all the special features of the premises: *Held*, a violation of the statute, and a denial of the right of the defendant to be confronted with the witnesses against him.

ERROR BEING SHOWN, BURDEN IS ON THE STATE TO SHOW THAT NO INJURY OCCURRED.—When it is shown that a clear legal right of the defendant in a criminal case has been transgressed, it devolves upon the state to prove that he was not harmed thereby.

CRIMINAL LAW—INSTRUCTIONS—MURDER IN THE FIRST DEGREE, WITHOUT INTENT TO KILL.—Under our statute (Comp. L. 2327), there may be murder without any intent to kill. An involuntary killing, which is committed in the prosecution of a felonious intent, is murder; and if the felony attempted is arson, rape, robbery, or burglary, it is murder in the first degree. (Comp. L. 2323.)

IDEM—TAKING MONEY FROM A PERSON NOT NECESSARILY ROBBERY.—Taking money from the person of another is not necessarily robbery, and it is inaccurate to say, in an instruction, that killing, "in the attempt to take money," is murder in the first degree.

IDEM—MEANING OF WORDS "DELIBERATE" AND "PREMEDITATED."—The words "deliberate" and "premeditated," as used in our statutory definition of murder, are of similar import, each implies the other, and it makes no difference whether they are used conjunctively or disjunctively.

IDEM—EXPRESS MALICE—MURDER IN THE FIRST DEGREE.—Under the statute of this state, express malice necessarily renders any murder, murder of the first degree.

IDEM—VOLUNTARY KILLING WITH DEADLY WEAPON, NOT NECESSARILY MURDER IN THE FIRST DEGREE.—The court instructed the jury as follows: "If the defendant purposely and voluntarily struck Vicente Ruiz with an ax, it must have been willful, and if it was willful, and he intended to kill, it must have been deliberate, and if the deliberation was for a single moment, it amounted to premeditation, so that the act became willful, deliberate, and premeditated:" *Held*, erroneous.

APPEAL from the District Court of the Seventh Judicial District, Elko County.

The facts appear in the opinion.

*R. R. Bigelow*, for Appellant:

I. The conversations held by the jurors with Chris. Walsh were concerning a subject connected with the trial, and

constitute a fatal error. It was not the intention of the law that the jury should be allowed to roam around and pick up any information out of court. It was only intended that the jury should view the place where the offense is charged to have been committed, for the sole purpose of enabling the jurors to understand the testimony given in the court. (*Wright* v. *Carpenter*, 49 Cal. 607.) No explanations whatever are to be made, and no person even allowed to speak to them on any subject connected with the trial. (1 Comp. L. 2002; *People* v. *Green*, 53 Cal. 60.)

II. The second instruction given by the court is erroneous. (1 Comp. L. 2321, 2323; Whart. on Hom., sec. 184 *et seq.; Tooney* v. *State*, 5 Tex. Ct. of App. 187; *Pharr* v. *State*, 7 Id. 477.)

III. The court erred in instructing the jury that if the killing was done with either deliberation or premeditation, it is murder in the first degree. The law requires that both deliberation and premeditation shall exist, to make the crime murder in the first degree.

IV. The court erred in instructing the jury that willful, unlawful, and premeditated killing constitutes murder in the first degree, leaving out entirely the questions as to whether the killing was done with malice aforethought or contained the element of deliberation. Malice aforethought was always necessary to constitute murder, under the common law, and our statute requires both that and deliberation to exist, together with the ingredients mentioned in the instructions, to make up the crime of murder in the first degree. (Whart. Homicide, secs. 176, 177, 179, 180; *People* v. *Sanchez*, 24 Cal. 28; *People* v. *Long*, 39 Id. 694; *People* v. *Nichol*, 34 Id. 212; 2 Bish. Cr. Law, 726–28.)

The latter part of the instruction is clearly erroneous. (Bouvier's Law Dic., "Deliberation;" 2 Bish. Cr. L. 716; *Golden* v. *State*, 25 Ga. 527.)

*M. A. Murphy*, Attorney-General, for Respondent:

I. The statute authorized the court to order a view of the premises. (1 Comp. L. 2001.) The defendant was not prejudiced. The record is silent, and it will be presumed

that the court pursued the course pointed out by the statute, and appointed Chris. Walsh to show the jurors the place where the homicide was committed.

The defendant's attorneys did not except to the order of the court, in instructing the jury to view the premises, nor did they take an exception to the course pursued by the jury in making such examination until after the verdict had been recorded, and it was then too late to take an exception.

II. The objections to the instructions given by the court are not well taken. There are certain kinds of murder which carry with them conclusive evidence of premeditation. The statute has taken upon itself the responsibility of saying that these cases shall be deemed and held to be murder of the first degree. The test question, "Is the killing willful, deliberate, and premeditated?" is answered by the statute itself, and the jury have no option but to find the prisoner guilty in the first degree. (1 Comp. L. 2323; *State* v. *Harris*, 12 Nev. 415; *People* v. *Sanchez*, 34 Cal. 25; *People* v. *Nickol*, 34 Id. 214; *People* v. *Long*, 39 Id. 694.)

By the Court, BEATTY, C. J.:

The defendant appeals from a judgment convicting him of murder in the first degree, and also from the order of the district court denying his motion for a new trial.

One of the grounds for granting a new trial on application of the defendant in a criminal action, is the following:

"2. When the jury has received any evidence out of court other than that resulting from a view as provided in section 377." (Cr. Pr. Act., sec. 428.)

Section 377 reads as follows: "Section 377. Whenever in the opinion of the court it is proper that the jury should view the place in which the offense is charged to have been committed, or in which any other material fact accrued, it may order the jury to be conducted in a body, in custody of the sheriff, to the place which shall be shown to them by a person appointed by the court for that purpose."

The meaning of this section is sufficiently evident, but

it is rendered still more plain by reference to the section immediately following:

"Section 378. No person shall be suffered to speak to the jury on any subject connected with the trial, and the officer shall return them into court without unreasonable delay, or at a specified time."

But one construction can be put upon this language, and that is, that when the jury are sent out under these provisions of the statute, they go for the single purpose of viewing the place, and not for the purpose of hearing any oral explanations or comments even from the person appointed by the court to show it to them.

As at other recesses and adjournments of the court, the following oath should be administered to the officer in whose custody they are sent:

"You do solemnly swear that you will, during this recess, keep this jury together, and that you will return them into court at the opening thereof, and that in the mean time you will not allow any person to speak to them or either of them, nor speak to them or either of them yourself on the subject of the case now on trial, so help you God." (Cr. Pr. Act, sec. 380.)

It would be well also to repeat to the jury the usual admonition "not to converse among themselves or with any one else on any subject connected with the trial." (Sec. 381.)

These various provisions of the statute all point to the same conclusion as to the correct practice in sending out a jury for the purpose of a view. The order of the court should specify the place to be inspected, and should designate some person who knows the place, to point it out to the jury. The person so designated, and none other, except the officer in charge, should conduct the jury to the spot, and should leave them to make their own observations without any comment or explanation whatever. (*People* v. *Green*, 53 Cal. 60.)

In this case the following order was made by the court pending the trial: "It being deemed by the court proper that the jury should view the place of the commission of the alleged offense, the officer in charge of the jurors was

directed by the court to conduct them to said place, and show them the same."

By this order, the officer in charge of the jury was the person appointed by the court to show them the place. He, and no one else, was charged with that duty. But it appears from the affidavits filed in support of the motion for a new trial, that the officer in charge of the jury had no personal knowledge of the place where the homicide occurred, and took the jury to a place which he *supposed* to be the one designated in the order of the court.

This was in itself a serious irregularity, for the person sent with the jury for that purpose, ought to be able to testify that he has shown them the identical place specified in the order of the court. But this is not the ground relied on by the defendant in support of his appeal. It appears by the affidavits, that when the jury arrived at the premises they were sent to inspect, they found there a person named Chris. Walsh, who was never even sworn as a witness in the case, and who, in response to questions addressed to him by members of the jury, pointed out to them all the special features of the premises.

We do not see how it is possible to say that this was not a violation of the law, and a denial of the right of the defendant to be confronted with the witnesses against him. Indeed, it is not seriously denied that the jury " received evidence out of court other than that resulting from a view," etc., but it is contended that Walsh told them nothing more than others—witnesses—had told them, and that the defendant could not have been injured.

Of course, if it can be made clear that no injury resulted to the defendant from the act complained of, the error is cured. But when it is shown that a clear legal right of the defendant in a criminal case has been transgressed, it devolves upon the state to prove that he was not harmed thereby, and in this case we think such proof is wanting.

The theory of the prosecution was, that the deceased was killed by a blow received while he was sleeping, or at least lying, in his bed. The defendant testified that he and deceased occupied the same room; that deceased, coming in

late at night, drunk and abusive, after some altercation, attacked and wounded him with a knife; and that he struck the fatal blow in self-defense. A number of men were sleeping on the premises at the time, and as they heard no noise of a struggle or altercation, it was of obvious importance to show on the one hand that they would have been likely, and on the other, that they would not have been likely to hear such noise if any had been made. In this view, probably the jurors inquired as to the room where the homicide occurred, and the place where the other persons slept, and their inquiries as to these particulars were answered by Walsh.

Whether his answers were correct or incorrect can not be known. They may have been false and extremely prejudicial to the defendant, but whether they were or not makes no difference. It can not be denied that the jury received material and vitally important evidence out of court from a witness who was not sworn, who was not confronted with the defendant, and as to whom there was no opportunity of cross-examination.

Such being the case, we think the district court erred in denying defendant's motion for a new trial, and that the judgment and order appealed from must be reversed.

In view of the necessity of a re-trial of the case it will be proper to notice some inaccuracies in the instructions in order to prevent any future question respecting them.

The following was given at the request of the state:

"If the jury believe beyond a reasonable doubt that the defendant killed Vicente Ruiz while feloniously taking or attempting to take any money from the person of Ruiz, then the jury should find the defendant guilty of murder in the first degree."

This instruction is not erroneous, for the reason principally relied on by counsel. Under our statute (Comp. L. 2327) there may be murder without any intent to kill. An involuntary killing which is committed in the prosecution of a felonious intent is murder; and if the felony attempted is arson, rape, robbery, or burglary, it is murder in the first degree. (Comp. L. 2323.) The statute on this point is too

plain to admit of construction. But in one or two minor particulars this instruction is not sufficiently guarded. It assumes to state an hypothesis that will authorize a verdict of murder in the first degree; but it does not state the hypothesis accurately or completely, and is therefore technically erroneous. Taking money from the person of another is not necessarily robbery, and it is inaccurate to say, that killing in the attempt to take money is murder in the first degree. It was necessary also, in order to make the case complete, that the killing should have been done in Elko county. This error could perhaps be shown to have been immaterial in this case; but in criminal, and especially in murder cases, even merely technical errors should be avoided as far as possible.

The next instruction complained of is the following: "Murder in the second degree is the unlawful killing of a human being, with malice aforethought, either express or implied, but without the admixture of premeditation or deliberation. If you believe from the evidence, beyond a reasonable doubt, that about the —— day of October, 1879, the defendant, with malice aforethought, but without the admixture of premeditation or deliberation, willfully and unlawfully struck Vicente Ruiz with an ax, with intent to kill him, you should convict the defendant of murder in the second degree."

The fault found with this instruction is, that it permits a verdict of murder in the first degree, and impliedly requires it, in the absence of either of two necessary ingredients, viz., premeditation and deliberation. It is doubtful if this criticism would be held sound, even if the words "deliberate" and "premeditated," as they are used in our statutory definition of murder, were not synonymous, but it is a sufficient answer to the objection of counsel that these words are of similar import, each being held to imply the other, and so it makes no difference whether they are used conjunctively or disjunctively. (*People* v. *Pool*, 27 Cal. 584.)

We find no error in this instruction, except an error on the side of the defendant, which consists in saying that

*express* malice may be an ingredient of murder in the second degree. Under our statute, express malice necessarily renders any murder, murder of the first degree. There may be murder of the first degree without it, but it can not co-exist with murder of the second degree. (Comp. L., sec. 2322, 2323, 2327.)

The next instruction to which exception is taken is the following:

" Murder in the first degree consists of a willful, unlawful, premeditated killing. The intention to kill must exist," etc.

This is inaccurate and inconsistent with the first instruction above quoted, in which the jury were correctly informed that there might be murder in the first degree without any intent to kill (as where the killing takes place in the attempt to perpetrate a robbery, etc). Of this, however, the defendant can not complain, as it was in his favor; but the latter part of the instruction, and especially the concluding sentence, contains a more serious error. It says:

" In short, if the defendant purposely and voluntarily struck Vicente Ruiz with an ax, it must have been willful; and if it was willful, and he intended to kill, it must have been deliberate; and if the deliberation was for a single moment, it amounted to premeditation; so that the act became willful, deliberate, and premeditated."

If we understand this language correctly, it deduces the conclusion, that any voluntary killing with a deadly weapon, provided it is unlawful, is necessarily murder in the first degree. But this is not so. There may be an intent to kill springing from ungovernable passion, where no deliberation or premeditation can be implied. In such case the killing will be either murder in the second degree or manslaughter, according to the legal sufficiency or insufficiency of the provocation, or the presence or absence of sufficient cooling time.

In this case it was practically important not to misstate the law of voluntary manslaughter, for although the effort of the defendant was to show a complete justification of the

killing, his testimony none the less tended to show provocation.

The other portions of the charge, not having been excepted to, we presume were correct.

The judgment is reversed, and the cause remanded for a new trial.

HAWLEY, J., concurring: I concur in the judgment.