[No. 1677.]

# THE STATE OF NEVADA, RESPONDENT, *v.* FRANK WILLIAMS, APPELLANT.

1. HOMICIDE—ROBBERY—FIRST DEGREE MURDER. Where a homicide occurred as part of a continuous assault about two minutes after a robbery, and was for the apparent purpose of preventing detection, defendant was guilty of murder in the first degree.

2. JURORS—QUALIFICATION—OPINION. Where a juror had formed a qualified opinion as to defendant's guilt, based largely on newspaper reports and hearsay statements of others, which did not purport to be made by witnesses who knew the facts, and he testified that he was able to decide the case on the evidence introduced, and, unless convinced of defendant's guilt from the evidence beyond a reasonable doubt, would acquit him, he was not subject to challenge.

3. HOMICIDE—EVIDENCE—DYING DECLARATIONS. In a prosecution for homicide, a written dying statement made by deceased was not objectionable because it was in a narrative form and did not include the questions asked.

4. CRIMINAL LAW—PROSECUTING ATTORNEY—ARGUMENT—MISCONDUCT. Where, in a prosecution for homicide, defendant's counsel did not avail himself of the privilege of securing an alleged confession in the possession of the state and offer it in evidence, the fact that the prosecuting attorney in his opening statement erroneously referred to such confession as having been voluntarily made by defendant, and stated some of the facts contained therein, and that he "might" introduce it in evidence, which he subsequently failed to do, did not constitute reversible error.

5. SAME—FAILURE TO TESTIFY. Where a prosecuting attorney, in reply to the argument of defendant's counsel that an alleged confession, if introduced, would have been beneficial to accused, stated that defendant could have taken the stand and testified with reference to the confession, referred to by the state but not introduced in evidence, if he had so desired, and the court, in response to an objection, stated that the fact that defendant was not a witness could not be considered against him, the argument of the prosecuting attorney was not reversible error.

APPEAL from the District Court, Washoe County; *B. F. Curler*, Judge.

Frank Williams was convicted of murder in the first degree, and he appeals.  **Affirmed.**

The facts sufficiently appear in the opinion.

*Hummel & Hartson*, and *P. N. Packard*, for Appellant:

I. The evidence is insufficient to justify the verdict in that it appears from said evidence that the killing was done without premeditation, premeditation being a requisite for

murder in the first degree. The evidence of Albert Waldman, the state's only eye-witness to the killing, was to the effect that the shooting occurred at least two minutes (it might have been longer) after the perpetration of the robbery, and upon another car, and at another place; and was therefore, by reason of the lack of premeditation, murder in the second degree. (Comp. Laws, 4672.)

II. The court erred in refusing to strike out the alleged dying declaration of Jack Welsh. The testimony of C. E. Robbins shows that Jack Welsh, at the time he made the alleged dying statement, was in a comatose condition. The said declaration consists simply of a lot of answers to direct questions propounded by the district attorney, and answered in the manner and form indicated by the state's attorney. As a matter of fact the said Welsh made no declarations. It was simply the testimony, unsworn, of Mr. Warren, assented to by Mr. Welsh at Warren's instance. Declarations of one to be admissible as dying declarations must have been made under the sense or belief of his impending death. The explicit statement of the declarant that he was going to die is not always enough to show that the declaration was really made under the belief of impending death. The alleged statement shows on its face that it is simply a lot of answers to direct questions propounded by the district attorney. Dying declarations founded upon questions and answers must contain the questions as well as the answers. (Abbott's Crim. Cases, 2d ed. 486; *Titus* v. *State*, 117 Ala. 16, 23 South. 77; *Starr* v. *Com.*, 97 Ky. 193, 30 S. W. 397; Taylor's Med. Jur. 454–455; *People* v. *Brady*, 14 Cal. 202.)

III. The court erred in not compelling the state to produce the alleged confession of the defendant, as set forth in the prosecuting attorney's opening statement to the jury. The statement of the prosecuting attorney in the opening of the case to the jury, in the presence of the court, is an official statement made under the solemnity of his official oath. In this statement the prosecuting attorney used the following language: "Now, there may be, and probably will be, another feature of this case introduced on the part of the state, and it will be evidence to show that this defendant

was duly convicted in Humboldt County, in conjunction with Sevener, Roberts, and Gorman, of murder in the first degree, and sentenced to be hanged for that crime; that, while they were confined in the Nevada Penitentiary awaiting the execution of that sentence, this defendant, without solicitation, without promise of reward, without any condition attached thereto, made a written statement; that he declared to the warden of the penitentiary, Mr. Considine, that he wished to make a written statement concerning that crime, not through expectancy of a reward, or of clemency, but for the sole purpose of relieving his mind and letting the world know the exact conditions that surrounded the commission of that crime; that he was warned of his rights, and still persisted in making a written statement; that statement will probably be read to you in evidence, and in that statement this defendant declares what was done with the plunder that they received off of Jack Welsh and Albert Waldman, tells what was done with the plunder that was taken off of Townsend on the east-bound train, tells where it was cached down near Lovelock, tells how they went from there into the town of Lovelock, how they were arrested, and gives the full particulars of the commission of the crime."

If there was such a confession and the prosecution had it in its power to produce the same as indicated by the prosecuting attorney, then it was highly important that the same should have been produced and read to the jury, for the reason that said evidence went to the entire transaction and to every detail thereof. It was the testimony of one who was present during the entire transaction and who knew who fired the fatal shot that terminated the existence of Jack Welsh. In a criminal case the prosecution cannot select one part of a transaction and ask a conviction thereon when testimony showing the whole thereof is within its reach. Having stated officially to the court and jury that he would probably produce said confession, and the legal effect thereof, the prosecution ought to have produced the same or made some satisfactory explanation to the court why he did not, otherwise a suggestion is raised that there was design and purpose in omitting to produce said confession. The refusal

by a prosecuting attorney to call as a witness, when available, one who was present during the commission of the crime, and so stated as present by such attorney, to the jury, is ground for a reversal of judgment. (*Maher* v. *People*, 10 Mich. 226; *Territory* v. *Hanna*, 5 Pac. 252; *Hurd* v. *People*, 25 Mich. 415; *Weller* v. *People*, 30 Mich. 23.) When the confessions of the accused are given in evidence against him, all that he said in said confessions explanatory thereof, intending to discharge him from its effect, is competent in his behalf. (Abbott's Trial Brief, 2d ed. 454; *Real* v. *People*, 42 N.Y. 270–279.) In the case at bar the prosecuting attorney presumably stated the incriminating facts only of said confession, which practically amounted to his having read that much thereof to the jury and to having suppressed any explanatory facts that might have been contained in said confession. (Law Notes, vol. 9, no. 3, p. 43.)

IV. When the attorney on the part of the state in his closing argument refers to the fact that the defendant failed to testify on his own behalf, or uses language calculated to call the attention of the jury to such facts, a motion for a new trial should be granted. The court erred in allowing the prosecuting officer to comment on the fact that the defendant did not testify on his own behalf, and in overruling defendant's objection thereto. Comp. Laws, 4653–4654, provide that "in the trial of all indictments, complaints, and other proceedings against persons charged with the commission of crimes or offenses, the person so charged shall, at his own request, but not otherwise, be deemed a competent witness. * * * Nothing herein contained shall be construed as compelling any such person to testify"; and further provides that, if he "declines to testify, the court shall specifically instruct the jury that no inference of guilt is to be drawn against him for that cause." The statute preserves to the accused that provision in the declaration of rights that "no person shall be compelled in any criminal case to be a witness against himself." (Const. Nev. art. I, sec. 8; *State* v. *Chisnell*, 36 W. Va. 569; *Morrison* v. *State*, 76 Ind. 388; *State* v. *Banks*, 78 Me. 490; *State* v. *Black* (Kan.) 2 Pac. 609; *Com.* v. *Scott*, 123 Mass. 123; *People* v. *Tyler*, 36 Cal. 522; *Ruloff* v. *People*, 45

N. Y. 213; *Crandall* v. *People*, 2 Lans. (N. Y.) 309; *Wilson* v.
*United States*, 149 U. S. 60; *Austin* v. *People*, 102 Ill. 264;
*McDonald* v. *People*, 126 Ill. 155; *Quinn* v. *People*, 126 Ill.
452; *State* v. *Moxley*, 102 Mo. 374; *Staples* v. *State*, 89 Tenn.
23; *Jordan* v. *State*, 29 Tex. App. 395; *McPherson* v. *State*,
15 S. W. 174; 28 Tex. App. 140; *Martin* v. *State*, 79 Wis. 165;
*State* v. *Howard*, 35 S. C. 197.)

*James G. Sweeney*, Attorney-General, for Respondent:

I.   The Legislature of Nevada has declared that there are
certain kinds of murder which carry with them conclusive
evidence of premeditation; these the legislature has enumer-
ated in the statutes, and has taken upon itself the responsi-
bility of saying that they shall be murder in the first degree.
One of these classes of murder is where it is committed in
the perpetration or attempt to perpetrate a robbery, and
where a jury finds a murder has been thus committed it has
no option other than to find the perpetrator or perpetrators
guilty of the murder guilty in the first degree.   The whole
transcript of this case conclusively proves that the defendant
in this case, in conjunction with three other parties, attempted
and committed the crime of robbery on the night of the
tragedy, and that, while perpetrating that crime of robbery
on the deceased (Jack Welsh) and one Al. Waldman, Jack
Welsh was shot to death.   The evidence shows conclusively
that every act of the defendant and his associates on that
fatal night pointed out that the robbery was planned and
premeditated wilfully and deliberately.   The premeditation
appearing in the crime of the robbery which they were per-
petrating, it did not make it necessary to show premeditation
after the murder.   The statute in itself makes premeditation
unnecessary to find a verdict of murder in the first degree
where it is shown that the murder was committed during the
perpetration of the crime of robbery.   No specific length of
time is required for premeditation, and the fact that the
murder of Jack Welsh did not occur until a couple of min-
utes after he was robbed cannot alter the verdict of murder
in the first degree.   The evidence shows that immediately
after Jack Welsh was robbed he was thrown off the train,

and, while climbing down from the train, was shot to death, the robbery and murder being coupled distinctively together. (Comp. Laws, 4672.)

II.   The court did not err in refusing to sustain defendant's challenge to the juror A. C. Helmold on the ground that he had formed and expressed an unqualified opinion as to the guilt or innocence of the accused of the crime charged. The examination of the juror Helmold on his *voir dire* discloses that he had neither formed nor expressed an unqualified opinion of the guilt or innocence of defendant for the crime charged.   The evidence shows that the opinion was neither fixed, settled, nor positive.   The juror testified that he could lay aside any opinion he may have formed and render an opinion upon the evidence given and the law given by the court.   The juror having only a qualified opinion as to the guilt or innocence of the defendant, and that qualified opinion being founded on newspaper accounts and rumors, it was not such opinion as would disqualify him to act as a juror.   Our statute provides that the opinion of a juror, to disqualify him, must be unqualified opinion or belief that the prisoner is guilty of the offense charged, and that such unqualified opinion shall not have been formed or expressed or based upon the reading of newspaper accounts of the transaction.   (Comp. Laws, 4305.)

The real question to be determined as to the qualification of a juror on the question of having formed and expressed an opinion is the ability of the juror to set aside the opinion formed and render an impartial verdict on the law and evidence.   (*State* v. *McClear*, 11 Nev. 39, 66, 68; *State* v. *Simas*, 25 Nev. 432, 451; *State* v. *Millain*, 3 Nev. 371, 379, 384; *State* v. *Raymond*, 11 Nev. 98; *State* v. *Davis*, 14 Nev. 439, 448, 450; *State* v. *Carrick*, 16 Nev. 120, 128; *People* v. *Wong Ark*, 96 Cal. 125; *State* v. *Smith*, 49 Conn. 376; *Coughlin* v. *People*, 114 Ill. 140; *Elliot* v. *State*, 73 Ind. 14; *State* v. *Revells*, 35 La. Ann. 302; *Brown* v. *State*, 57 Miss. 424, 430; *State* v. *Bronstine*, 147 Mo. 520; *Bolln* v. *State*, 51 Neb. 581; *State* v. *Jones*, 80 N. C. 415; *Commonwealth* v. *Crossmire*, 156 Pa. St. 304; *People* v. *O'Loughlin*, 3 Utah, 133; *State* v. *Meaker*, 54 Vt. 112; *Dejarnette* v. *Commonwealth*, 75 Va. 867; *State* v. *Baker*,

33 W. Va. 329; 17 Am. & Eng. Ency. Law, 2d ed. p. 1141, and authorities cited.)

The courts of all the states of the Union hold that jurors will not be excluded on account of opinions which they may possess if they are founded on rumors and newspaper reports. (17 Am. & Eng. Ency. Law, 1143; Comp. Laws, 4305, subd. 8, Crim. Pr. Act.)

In this case Juror Helmold testified, in answer to a query of the court, that the opinion he had formed and entertained was formed on general rumor, or what might be more commonly termed street rumor or street talk, and from what he had read in the newspapers. (*People* v. *Owens*, 123 Cal. 482; *Gallet* v. *United States*, 87 Fed. 446; *State* v. *Williams*, 3 Stew. (Ala.) 454; *Hardin* v. *State*, 66 Ark. 53; *People* v. *Brown*, 59 Cal. 345; *People* v. *Irwin*, 77 Cal. 494; *State* v. *Hoyt*, 47 Conn. 530; *United States* v. *Barber*, 21 D. C. 456; *Brown* v. *State*, 40 Fla. 459; *Myers* v. *State*, 97 Cal. 94; *Plummer* v. *People*, 74 Ill. 361; *State* v. *Butler*, 97 Ind. 378; *State* v. *Young*, 104 Iowa, 730; *State* v. *Dent*, 71 Md. 295; *State* v. *Bussey*, 58 Kan. 679; *People* v. *Foglesong*, 116 Mich. 556; *State* v. *Bronstine*, 147 Mo. 520; *State* v. *DeGraff*, 113 N. C. 688; *State* v. *Saunders*, 14 Or. 300; *Commonwealth* v. *Eagan*, 190 Pa. St. 10; *Woods* v. *State*, 99 Tenn. 182; *Morrison* v. *O'Laughlin*, 3 Utah, 133; *State* v. *Meyers*, 58 Vt. 457; *State* v. *Carey*, 15 Wash. 549; *Wright* v. *Commonwealth*, 32 Gratt. (Va.) 941.)

In order to discover whether a juror is qualified or disqualified to act as a juror, his whole examination on his *voir dire*, and not upon a part thereof, or by use of particular or catch expressions, must be considered. (*State* v. *Cunningham*, 100 Mo. 382; *Clark* v. *Com.*, 123 Pa. St. 555; *Butler* v. *State*, 97 Ind. 378; *Pemberton* v. *State*, 11 Ind. App. 297; *U. P. Ry. Co.*, v. *Motzner*, 8 Kan. App. 431; *State* v. *Bailey*, 50 La. Ann. 533; *Burlington* v. *Beebe*, 14 Neb. 463; *Hall* v. *Com.*, 89 Va. 179; 17 Am. & Eng. Ency. Law, 2d ed. 1150.)

III. Where it is expressly declared by statute, as it is in our own state and in nearly all of the states of the Union, that, if opinions of jurors be founded on rumors or newspaper reports, such opinions will not disqualify them from acting as trial jurors, providing the judge of the trial court

be satisfied from the statements of the juror that he can and will act impartially. (*Coughlin* v. *People*, 144 Ill. 140; *Commonwealth* v. *Eagan*, 190 Pa. St. 10; *State* v. *Cunningham*, 100 Mo. 383; *State* v. *Roddy*, 184 Pa. St. 274; *Thiede* v. *Utah Territory*, 159 U. S. 510; *Hopt* v. *Utah*, 120 U. S. 430; *People* v. *Miller*, 125 Cal. 44; *People* v. *Wells*, 100 Cal. 227; *People* v. *Collins*, 105 Cal. 504; *People* v. *Jones*, 2 Colo. 351; *Thompson* v. *People*, 59 Pac. 51; *Spies* v. *Illinois*, 123 U. S. 131, 169; *Shields* v. *State*, 149 Ind. 395; *Smith* v. *Com.*, 100 Ky. 133; *State* v. *Burgess*, 78 Mo. 234; *State* v. *Sheerin*, 12 Mont. 539; *State* v. *Bolln*, 51 Neb. 581; *State* v. *Ekanger*, 8 N. Dak. 559; *Palmer* v. *State*, 42 Ohio, 596; *State* v. *Ingram*, 23 Or. 434; *Woods* v. *State*, 99 Tenn. 182; *State* v. *Ashland*, 31 Tex. 479; 17 Am. & Eng. Ency. Law, 2d ed. 1150.)

If the opinion is not based on such character of information as is necessary to involve disqualification and is not such as is necessary to affect the impartiality of his action, a statement by the venireman upon his examination that he can do impartial justice according to the law and the evidence is considered sufficient to justify his acceptance as a juror. (*State* v. *De Graff*, 113 N. C. 688; *Hopt* v. *Utah*, 120 U. S. 430; *State* v. *Morse*, 35 Or. 462; *Com.* v. *Eagan*, 190 Pa. St. 10; *Sims* v. *Jones*, 43 S. C. 91; *Woods* v. *State*, 99 Tenn. 182; *Trotter* v. *State*, 37 Tex. (Crim.) 468; *State* v. *Meyer*, 58 Vt. 457; *Com.* v. *Lyles*, 88 Va. 396; *State* v. *Baker*, 33 W. Va. 329; *Baker* v. *State*, 88 Wis. 140; *Bryant* v. *State*, 7 Wy. 311; 11 Am. & Eng. Ency. Law, 1152, and authorities cited under note 3.)

IV. The dying declaration of Jack Welsh was clearly admissible. The evidence shows beyond any question that, at the time of making the declaration, he was fully conscious of impending death; that he had abandoned all hope and all expectation of recovery; that he was entirely conscious and in full possession of his intellectual faculties. The declaration was admissible upon the ground of identification. (*Mattox* v. *U. S.*, 146 U. S. 140; *Commonwealth* v. *Roddy*, 184 Pa. St. 274; *Brotherton* v. *People*, 75 N. Y. 159; *State* v. *Freeman*, 1 Spears (S. C.) 57; *McLean* v. *State*, 16 Ala. 672; 10 Am. & Eng. Ency. Law, 2d ed. 383.) The dying declarations were

admissible in evidence, they having been made in the presence of the defendants, and were admissible for the purpose of showing ·defendants' conduct and behavior when identified and charged as being his assailants and accused of the crime, for which purpose they were specifically offered. (*State* v. *Nash and Redout*, 7 Iowa, 287; *State* v. *Brunetto*, 13 La. Ann. 45; *Kendrick* v. *State*, 55 Miss. 436; *Powers* v. *State*, 74 Miss. 777; *Donnelly* v. *State*, 26 N. J. L. 463; 10 Am. & Eng. Ency. Law, 2d ed. 360.) The rule as to the admissibility of dying declarations does not require that they should have been made while the sufferer was literally breathing his last. If the declarations were made under a sense of impending dissolution it does not matter if death failed to ensue until a considerable time after the declarations were made. (10 Am. & Eng. Ency. Law, 2d ed. 369, and authorities cited.)

The length of time elapsing between the making of the declarations and the declarant's death is, however, one of the elements to be considered in determining whether the declarations were made under a sense of impending death. (10 Am. & Eng. Ency. Law, 2d ed. 369, and authorities there cited.) In this instance Jack Welsh died within three hours of the rendition of the dying declarations. Even admitting, for the sake of argument, that deceased was partially unconscious, and which we strenuously deny, and refer to the evidence, the declarations were admissible, and the objection should go to their credibility and not to their admissibility. (*Hays* v. *Commonwealth* (Ky. 1890) 14 S. W. 833; *People* v. *Beverly*, 108 Mich. 509; 10 Am. & Eng. Ency. Law, 2d ed. 376, under note, "Narcotics.") A positive statement by the victim identifying the defendants as his assailants is not an expression of opinion, but a statement of fact where the victim had opportunities for observation. (10 Am. & Eng. Ency. Law, 2d ed. 378.)

Dying declarations of deceased as to the state of declarant's mind are proved by the express or direct language of the declarant. (10 Am. & Eng. Ency. Law, 2d ed. 388.) Dying declarations are not rendered inadmissible by reason of the fact that they were brought out by questions; nor is

it necessary that the statement should contain the questions propounded. The form and manner of giving dying declarations is immaterial; it is not even necessary that a declaration should be expressed in words; it may be communicated by signs, and be either oral or in writing. When the dying declaration is taken down in writing, and then read over to the declarant, and the declarant assents and affixes his name to the declaration, if all the other prerequisites to giving a dying declaration are present, the same is clearly admissible. (10 Am. & Eng. Ency. Law, 2d ed. 369-371, and authorities there cited.) A dying declaration is admissible if it is clearly drawn and a fair statement of the declarant's statement given; it is even immaterial that the exact language of deceased is not used, or that there may have been some omission; and a long line of authorities sustain this assertion, but such was not the case in the case at bar, as the dying declaration of Jack Welsh was taken from his lips, then read over to him, to which he assented and signed.

V. The court did not err in not compelling the state to produce the alleged confession of the defendant alluded to by the district attorney in his opening statement to the jury. The state had the perfect right to produce such evidence as in its judgment was necessary, and because it failed to produce the alleged confession of Williams it was not error. Defendant had the right, and he was not prevented by the court or counsel for the state in explaining away the confession referred to by the district attorney, if he so desired. The defendant was present in court to speak for himself, and if, by reason of any neglect of his own, he damaged his case, it was entirely his own fault. The district attorney in his opening statement did not state positively that the confession would be used; he stated that the same might be introduced. The defendant was thereby notified through this statement that such a confession was in existence, and if they had any desire to rebut the statement concerning the confession, or to take any exceptions to the matters contained in the confession, or to show under what circumstances the same were given, it was their privilege to do so. If the state in a criminal prosecution were compelled to give in evidence state-

ments or alleged confessions made by criminals, every criminal in the land would make some sort of a statement or confession, simply for the purpose of getting some views before the jury which might not be admissible otherwise.

VI.   The court did not err in allowing the district attorney to comment on the argument of counsel for defendant when counsel for defendant was arguing as to why the defendant had not taken the stand.   Our statute provides that in all cases wherein the defendant to a criminal charge declines to testify, the court shall specially instruct the jury that no inference of guilt is to be drawn against defendant for that cause.   This the court did in its instructions to the jury in the case at bar.   The statute does not provide that no comments by the district attorney shall be made in answer to the counsel for the defendant; it simply states that the fact that a person is not a witness cannot be considered against him in the trial of the case.   (Comp. Laws, 4653–4654.)

*D. H. Hartson* and *P. N. Packard*, for Appellant, in reply:

I.   The court erred in overruling the objections of the defendant to the remarks of the prosecution relative to defendant not taking the witness stand in his own behalf. The court could not cure the error by a charge to the jury because section 4654 of the Compiled Laws makes the giving of the instruction mandatory, and allowing the counsel for the state to make the comments complained of neutralized and nullified the effect of the mandatory charge.   The position the defendant was placed in was this: The court by its ruling held the remarks of counsel proper and legal, but, after they were given, the general instruction of the court pursuant to statute could not cure the error.   The statute above cited implies that no remarks or comments such as complained of shall be made by counsel for the state; it makes him a witness at his own request only; if he refuses or neglects to take the stand in his own behalf, his constitutional rights are preserved; the statute commands the court, in case he fails to exercise his statutory privilege, to specially instruct the jury that no inference shall be drawn against him for that cause.   The court committed the same

error that the trial court did in the cases of *People* v. *Tyler*, 36 Cal. 522; *Com.* v. *Scott*, 123 Mass. 239; *Wilson* v. *United States*, 149 U. S. 60, and other cases cited in appellant's brief.

II. After a careful examination of the authorities, the only cases we have been able to find laying down a different rule than that contended for by this appellant are *State* v. *Bartlett*, 55 Me. 220, *State* v. *Lawrence*, 57 Me. 574, and *State* v. *Cleaves*, 59 Me. 299, but these cases have been overruled, and the case of *State* v. *Banks*, 78 Mo. 499, holds the same views as all other courts where a similar statute exists. We find none of the statutes of other states whose language is exactly the same as the statutes of this state. A number of the statutes of different states forbid any comment, while a number of the statutes provide that the failure or the neglect of the defendant to be a witness in his own behalf shall not create any presumption against him.

III. The only construction that can with any reason be applied to the statute of this state is that, on the part of the state, the prosecution must be silent on the failure of the accused to take the witness stand on his own behalf, and, as a further safeguard, the court shall specifically instruct the jury that no inference shall be drawn as a result of said failure, not alone restricting the state, but especially restricting the constitutional rights of the accused by providing for a special instruction. (Comp. Laws, 4653–4654.)

IV. Courts have no power in criminal cases to affirm a judgment merely because the judges are persuaded upon the merits of the case that the judgment is right. If an error intervenes in the proceeding, it is presumed to be injurious to the prisoner, and generally he is entitled to a reversal of the judgment; it is his constitutional right and privilege to stand upon his legal rights, and to be tried according to law. (*People* v. *Williams*, 18 Cal. 187; *Hatch* v. *State*, 8 Tex. App. 416; *People* v. *Divine*, 44 Cal. 460; *People* v. *Benson*, 51 Cal. 382.)

By the Court, TALBOT, J.:

Jointly with three others, Fred Roberts, J. P. Sevener, and T. F. Gorman, this defendant was convicted of murder in the

first degree in Humboldt County, and on a former appeal with them was granted a new trial by this court. (27 Nev. 449.) Later, and after the case against all of them had.been transferred to Washoe County, Williams was given a separate trial, which again resulted in his conviction and sentence of death. He appeals from the judgment and order denying a new trial. The facts are stated in the opinion which we have rendered against the other three. (See page 350 of this volume.)

It is said that the evidence is insufficient to justify the verdict of murder in the first degree because the shooting was not done until about two minutes after the robbery. It occurred as part of a continuous assault, lasting from the robbery to the shooting, and apparently was done for the purpose of preventing detection. The court properly instructed the jury that under the statute all murder committed in the perpetration of robbery is of the first degree. If there had been no robbery, there was sufficient time for premeditation to justify the verdict. (*State* v. *Gray*, 19 Nev. 218; *State* v. *Lopez*, 15 Nev. 407; *State* v. *Millain*, 3 Nev. 409; *State* v. *Ah Mook*, 12 Nev. 369.)

It is claimed that one of the jurors, A. C. Helmold, was incompetent by reason of having formed and expressed an unqualified opinion in regard to the guilt or innocence of the accused. He stated on his *voir dire* that he had heard the case discussed and what purported to be the facts, that he had not discussed it himself and had not talked with the witnesses regarding it, that from rumor and reading the newspapers he had formed an opinion regarding the guilt or innocence of the defendant, that his opinion was not unqualified, and that it would require evidence to change it. After he had been challenged by the defendant, the court gave him the following examination: "Q. Mr. Helmold, from what source did you get your information? A. Why, through the papers and through hearing talk generally. Q. Do I understand you to say you have not discussed the case yourself? A. I have not; no, sir. Q. And do I understand that the opinion you have formed is not a fixed, settled, positive opinion? A. It is not. Q. Has any one purported or attempted to detail to you what evidence was in this case? A. No, sir. Q. Have you ever

heard any of the witnesses talk on the case that you know of? A. No, sir. Q. Have you any firm, fixed opinion as to whether what you heard or what you read was the truth or not? A. Well, I could not say that, judge. I listened in a hearsay kind of a way. I could not express an opinion of a man innocent or guilty unless I heard evidence. Q. Until you had heard the evidence? A. No. Q. Well, now the opinion that you have got, as I understand it, depends entirely upon the truth or falsity of what you have heard? A. Exactly. Q. Well, now, supposing that there were no facts detailed upon the trial of this case such as you have heard on the outside; what effect would what you have heard on the outside have upon your mind in determining this case? A. It would not have very much. Q. Would it have any? A. It would have some until I heard the evidence. Q. Then do I understand that you could not divest yourself of any opinion that you might have and decide this case upon the evidence as it was produced here? A. I could. Q. You could. And would you do so? A. I would. Q. Well, now, supposing it would make no difference as to what you had heard, or supposing upon the trial of this case the state did not prove to your satisfaction beyond a reasonable doubt by the evidence adduced here upon the stand, that this man was guilty of any offense included in or charged in the indictment; what would you do then in a case of that kind? A. I would give the defendant the benefit of the doubt. Q. If they had not proved it beyond a reasonable doubt, you would acquit him? A. Beyond a reasonable doubt, I would. Q. You would acquit him? A. Yes, sir. Q. You understand, Mr. Helmold, in law, that an acquittal may simply amount to this: that the state has not proven the defendant guilty beyond a reasonable doubt? A. I understand that. Q. Now, if you were chosen as a juror in this case, could you divest your mind of all opinion that you have in the case, and hear evidence and determine it solely upon that and the law as given to you by the court? A. Certainly. Q. Is your mind made up that this man is either innocent or guilty? ' A. Well, I could not say as it is made up, but I have an opinion from what I have heard talked of. Q. Well, are you prepared to

say that this man is either guilty or innocent?   A. I am not.
Q. Did the persons who talked about this case pretend to
have been listeners to the evidence, or know what the evi-
dence was in the case?   A. Well, I could not say that.
Q. You do not know whether they did or not?   A. No.   Q.
Is your opinion based upon what would be termed street
rumor or street talk?   A. That is it.   The Court: Challenge
is denied."

The condition of the juror's mind should be determined
from the whole of his examination, and doubts should be
resolved in favor of the accused, as in other matters, to the
end that he may be tried by twelve fair and unbiased men.
(*State* v. *Buralli*, 27 Nev. 41, 71 Pac. 532.)   Considering all
the juror said, it is apparent that from reading the papers
and talking with others, who are not shown to have had any
direct knowledge of the facts or any information acquired
from sources other than newspapers, he had formed an
opinion regarding defendant's guilt or innocence such as
any one might have acquired who read the news usually
published regarding such crimes.   In this era of education,
intelligence, and diffusion of knowledge, when the telegraph
and cable flash information from the most distant parts of
the earth in a few seconds, when. an army of men are
employed in gathering and reporting the important happen-
ings of the world, and improved printing presses, invented
and operated by ingenious minds and cunning hands, are
publishing millions of papers daily, the man who does not
read and think and form opinions regarding such crimes as
murders committed in his locality is better fitted to have
lived in the Dark Ages than to serve on juries in the
twentieth century.   Still, in order to be a good juror,
any opinion he may have must be a qualified one, and
he must conscientiously feel that he can discard it in
arriving at a verdict, and realize that under our system
of jurisprudence persons charged with crime are not to
be prejudged or convicted upon newspaper reports or
hearsay, or found guilty by anything excepting evidence
introduced in court under the sanctity of an oath or in
conformity to legal practice.   Every one, however humble or

great, accused of crime, is entitled to be tried by jurors whose minds will be guided by such evidence only in arriving at their verdict. It is apparent that the juror was not disqualified under this test, that the opinion he possessed was only such an one as any disinterested, intelligent citizen who reads and thinks might form, and, although that opinion would naturally remain in his mind until something occurred to remove it, it appears to have been qualified by a doubt as to the truth or falsity of the information on which it was based, and that it was not a settled conviction regarding the defendant's guilt which would weigh with him in considering the testimony or swerve or influence his mind in arriving at a verdict. The case in regard to this juror is not, as contended in the brief, similar to that relating to the one the denial of whose challenge on the first trial was cause for reversal. The record indicated there that, after talking with persons who purported to know the facts, he had expressed an unqualified opinion, which, under the statute, rendered him incompetent. Here it merely appears that the juror had formed a qualified opinion based largely on newspaper reports, which the criminal practice act provides shall not disqualify, and that, regardless of the source of his information, his mind was not in a condition that rendered him incompetent to serve.

Exception was taken to the admission of the dying declarations of the deceased, Jack Welsh. The evidence showing their admissibility appears to have been quite as strong as that on the trial of the three defendants indicted with this one, and for the reasons stated in the opinion in their case the declarations were properly admitted against Williams.

The written dying statement was in narrative form, and it is further objected here that the questions were not included in the writing. It is sufficient to say that they were proven verbally on the trial, and the written declaration was complete without them.

In his opening statement to the jury, the attorney acting for the prosecution said: "Now, there may be, and probably will be, another feature of this case introduced on the part of the state, and it will be evidence to show that this defendant was duly convicted in Humboldt County, in conjunction

with Sevener and Roberts and Gorman, of murder in the first degree, and sentenced to be hanged for that crime; that while they were confined in the Carson Penitentiary, awaiting the execution of that sentence, that this defendant, without solicitation, without promise of reward, without any conditions whatever attached thereto, made a written statement; that he declared to the warden of the penitentiary, Mr. Considine, that he wished to make a written statement concerning the crime, not through expectancy of a reward, or of clemency, but for the sole purpose of relieving his mind and letting the world know the exact conditions that surrounded the commission of that crime; that he was warned of his rights, fully protected in his rights, and still persisted in making a written statement. That statement will probably be read to you in evidence, and in that statement this defendant declares what was done with the plunder that they received off of Jack Welsh and Albert Waldman; tells what was done with the plunder that was taken off of Townsend on the east-bound train; tells where it was cached, down near Lovelock; tells how they went from there into the town of Lovelock, how they were arrested; and gives the full particulars of the commission of the crime."

The purpose of an opening statement is to relate the facts that will be offered in evidence, so that the court and jury may better and more readily understand the testimony when it is introduced. It behooves all attorneys, but is especially incumbent on those representing the state, to limit their opening remarks to the facts they in good faith expect to prove. It was improper to detail the particulars of a confession, or to state that one had been made, and thereby bring to the attention of the jury matters prejudicial to the defendant, unless or until it was the intention to prove them. When the attorney for the state said they might or might not offer proof of the confession, it was in order for defendant's counsel to object, and for the court, on its own motion, to strike out and restrain any allusion to it until the prosecution gave direct assurance that they intended to prove it. (Thompson on Trials, 958.) An attorney who is prosecuting may be excused for stating facts which he expects and

believes he will prove, but which later cannot be shown because they are irrelevant, or for some good reason unknown to him at the time cannot be established later. (*State* v. *Crafton*, 89 Iowa, 109, 56 N. W. 257; *People* v. *Gleason*, 127 Cal. 323, 59 Pac. 592; 12 Cyc. 570, note 50.)

No exception was taken to this objectionable detail of a confession at the time it was made. (*State* v. *McMahon*, 17 Nev. 376, 30 Pac. 1000; numerous cases cited in the note in *People* v. *Fielding*, 46 L. R. A. 642.) No evidence was offered to sustain these statements made by the attorney after he had brought them to the attention of the jury, and yet he ought to have been well aware that no fact, and especially one so vital to the defendant, should be stated unless it was his intention to support it by evidence. It was his duty to seek conviction only on facts proved or earnestly sought to be presented by proper evidence, and not by reference to any others in his opening statement or in the presence of the jury. The use of every fair and honorable means is commendable in the effort to win cases, but in the heat and anxiety of trials even eminent counsel have too often so far forgotten their duty to themselves, to a worthy profession, and to the court as to seek to prejudice or influence juries by bringing to their attention facts which they are well aware could not be proven or presented under proper practice and the ordinary rules of evidence. Every high-minded attorney should scorn and rise above such petty and reprehensible methods. Closing an eloquent dissertation regarding the impropriety of statements made by counsel which were not supported by the evidence, the Supreme Court of Georgia said: "But let nothing tempt them to pervert the testimony or surreptitiously array before the jury facts which, whether true or not, have not been proven." (*Berry* v. *State*, 10 Ga. 523.)

"The right of discussing the merits of the cause, both as to the law and the facts, is unabridged. The range in discussion is wide. He may be heard in argument upon every question of law. In his address to the jury it is his privilege to descant upon the facts proved or admitted in the pleadings; to arraign the conduct of the parties; to impugn,

excuse, justify, or condemn motives, so far as they are developed in evidence; to assail the credibility of witnesses when it is impeached by direct evidence or by the inconsistency or incoherence of their testimony, their manner of testifying, their appearance upon the stand, or by circumstances. His illustrations may be as various as the resources of his genius; his argumentation as full and profound as learning can make it; and he may, if he will, give play to his wit or wings to his imagination. To this freedom of speech, however, there are some limitations. His manner must be decorous. All courts have power to protect themselves from contempt, and indecency in words or sentences is contempt. This is a matter of course in the courts of civilized communities, but not of form merely. No court can command from an enlightened public that respect necessary to an even administration of the law without maintaining in its business proceedings that courtesy, dignity, and purity which characterize the intercourse of gentlemen in private life. So, too, what a counsel does or says in the argument of a cause must be pertinent to the matter on trial before the jury, and he takes the hazard of its not being so. Now, statements of facts not proven and comments thereon are outside of the case. They stand legally irrelevant to the matter in question, and are therefore not pertinent. If not pertinent, they are not within the privilege of counsel." (*Tucker* v. *Hennekir*, 41 N. H. 323; *Hatch* v. *State*, 8 Tex. App. 423; 34 Am. Rep. 751; Thompson on Trials, 750; *State* v. *Berry*, 10 Ga. 522.)

"The profession of the law is instituted for the administration of justice. The duties of the bench and bar differ in kind, not in purpose. The duty of both alike is to establish the truth and to apply the law to it. It is essential to the proper administration of justice, frail and uncertain at best, that all that can be said for each party, in the determination of fact and law, should be heard. Forensic strife is but the method, and a mighty one, to ascertain the truth, and the law governing the truth. It is the duty of counsel to make the most of the case which his client is able to give him; but counsel is out of his duty and the right, and outside of the principal object of his profession, when he travels out of his client's

case and assumes to supply its deficiencies. Therefore it is that the nice sense of the profession regards with such distrust and aversion the testimony of a lawyer in favor of his client. The very fullest freedom of speech, within the duty of his profession, should be accorded to counsel; but it is license, not freedom of speech, to travel out of the record, basing his argument on facts not appearing, and appealing to prejudices irrelevant to the case and outside of the proof. It is the duty of courts, in jury trials, to interfere in all proper cases of their own motion. This is due to truth and justice. And if counsel persevere in arguing upon pertinent facts not before the jury, or appealing to prejudices foreign to the case in evidence, exception may be taken by the other side, which may be good ground for a new trial, or for a reversal in this court." ·(*Brown* v. *Swineford*, 44 Wis. 293, 28 Am. Rep. 582; Thompson on Trials, 965.)

We approve the language of the Supreme Court of California in *People* v. *Lee Chuck*, 78 Cal. 328, 20 Pac. 723: "We have been called upon many times to caution, sometimes to rebuke, prosecuting officers for the over-zealous performance of their duties. They seem to forget that it is their sworn duty to see that the defendant has a fair and impartial trial, and that he be not convicted except by competent and legitimate evidence. Equally with the court, the district attorney, as the representative of law and justice, should be fair and impartial. He should remember that it is not his sole duty to convict, and that to use his official position to obtain a verdict by illegitimate and unfair means is to bring his office and the courts into distrust. We make due allowance for the zeal which is the natural result of such a legal battle as this, and for the desire of every lawyer to win his case; but these should be overcome by the conscientious desire of a sworn officer of the court to do his duty, and not go beyond it."

In *Coleman* v. *State*, 111 Ind. 563, 13 N. E. 100, it was held that where the prosecuting attorney, in his opening statement, is guilty of misconduct prejudicial to the substantial rights of defendant, the latter, in order to avail himself of the error, must move to set aside the submission and discharge the jury. At the close of the testimony for the prose-

cution, counsel for the defendant moved the court "that the state be required to produce the confession that they alleged was made at the state prison, and introduce it in evidence, or, in lieu of that, that the court grant the defendant permission to introduce the same." The judge replied: "The court will not make either one of the orders that have been asked.. If you want the document itself, you can ask the state's attorney for it; and if you want to offer it in evidence you may do so, and when it is offered the court will rule upon the offer." After further discussion the court said: "Now, if you want an instruction upon what it is the duty of the jury to do in a case of this kind, you may prepare your instruction and present it to the court."

Counsel for the defendant did not avail themselves of the privilege of securing the confession and offering it in evidence, subject to the inspection of the court, and until it was presented and could be examined, and its contents ascertained, the refusal to make an order for its admission was quite proper. If the contention of counsel were correct, and if, as claimed, it were error for the court to refuse to order the confession introduced in evidence under these circumstances and without knowing its contents, it may still be said that there is no copy of it in the record, and nothing indicating that it was different from or more favorable to the defendant than what had been stated by the attorney for the state, or that it contained anything beneficial to the accused, or that its exclusion could have injured him in any degree.

During the closing argument of the attorney for the state, while he was making his remarks in answer to the argument of counsel for defendant in relation to the failure of the state to produce the alleged confession of the defendant, the following occurred: "Mr. Pike: The defendant is here. He could have taken the stand. If the statement is good reduced to writing, why isn't it good when given from the stand? Mr. Packard: If your honor please, we object to the statement of counsel in regard to the defendant not taking the stand. The statute says it shall not be used against him. Mr. Pike: The statute also says, may it please the court and gentlemen of the jury, that a self-serving declaration has no value and

cannot be used in court. The state's attorneys never at any time declared that they would use that statement, that declaration, or that statement reduced to writing. They said they might use it, and they might not; and after consulting together we concluded to might not, and we have not used it, but that throws no injury upon the defense. That reverts no damage to them. Their man is here, and if he has anything to say to this jury, why in the name of common sense hasn't he taken the witness stand, as he had a right to do, and declared it. Mr. Packard: Your honor, we object to that. The Court: I suppose you want a ruling of the court upon this question? Mr. Packard: We want a ruling of the court on this question, that no comments shall be made upon this witness not taking the witness stand. Mr. Pike: None made, excepting in connection with your own allegations. The Court: Well, the statute does not provide that no comments in answer to arguments by counsel for the defendant can be made. It says that the fact that a person is not a witness cannot be considered against him in the trial of the case. But in view of the argument made by counsel for the defendant, it is proper for counsel for the state to reply thereto. But no inference can be taken against the defendant by reason of his not testifying in the case. The objection to the argument is overruled. Mr. Packard: We note an exception on the ground stated in the objection."

We are cited to numerous decisions reversing cases because the prosecuting attorney had commented upon the failure of the accused to take the stand. In several states, statutes different from ours provide that no comment shall be made in that regard, and in a number of these and in some states without such a provision, but with one more like that in force here, reference by the prosecuting attorney to the defendant's omission to testify has been deemed reversible error. In *State v. Harrington*, 12 Nev. 129, this court, following the language of the opinion in *People v. McGungill*, 41 Cal. 430, said: "If he does not choose to avail himself of the statutory privilege, unfavorable inferences cannot be drawn to his prejudice from that circumstance." And, quoting Judge Cooley: "What we intend to affirm is that the

privilege to testify in his own behalf is one the accused may waive without justly submitting himself to unfavorable comments." The act of Congress provides that a defendant in a criminal action may appear as a witness in his own behalf and that his failure to testify shall not create any presumption against him.

In *Wilson* v. *U. S.*, 149 U. S. 68, 13 Sup. Ct. 765, 37 L. Ed. 650, it was held that the refusal of the court to condemn the reference of the district attorney and to prohibit any subsequent reference to the failure of the defendant to appear as a witness tended to his prejudice before the jury, and that this effect should be corrected by a new trial. Other cases holding directly that it was error for the state's attorney to comment on the failure of the accused to testify are cited in defendant's brief. The jury were properly instructed that the defendant was under no obligation to testify, that the statute expressly declares that his neglect to take the stand shall not create any presumption of guilt against him, and that they should decide the case with reference alone to the evidence actually introduced before them, and without reference to what might or might not have been proved if other persons had testified. The decisions are not uniform, but a number hold that comment by the prosecuting attorney on the failure of the accused to testify is error that cannot be cured by the instructions of the court. There is a review of cases in *State* v. *Chisnell*, 36 W. Va. 667, 15 S. E. 412, and those in Ohio and Indiana adhering to this rule are there disapproved. It was said that, where the court corrects the error by excluding the comment and admonishing the jury to disregard it, the authorities fairly sustain the proposition that it will not be ground for setting the verdict aside.

It will be noticed that the district judge sustained the alleged objectionable remarks only upon the ground that they were in answer to what the defendant's attorney had said in his argument, something that does not appear in the record, but which must be presumed to have justified a reply. (*Hoffman* v. *State*, 65 Wis. 46, 26 N. W. 110; *State* v. *Buralli*, 27 Nev. 41, 71 Pac. 532.) The text and citations at section 960 of Thompson on Trials are to the effect that an objection by

the opposing counsel, promptly interposed, followed by a rebuke and admonition from the trial judge to the jury to disregard the prejudicial statements, is generally, but not always, held sufficient to cure the prejudice. (1 Spelling, N. T. & App. P. 90; *Parrott* v. *Commonwealth,* 47 S. W. 452, 20 Ky. Law, 761; *Livingston* v. *State,* 141 Ind. 131, 40 N. E. 684; *State* v. *Hutchinson,* 95 Iowa, 566, 64 N. W. 610.) If it be conceded that the spirit of our statute prohibits unfavorable comment, when unprovoked, by prosecuting attorneys on the failure of accused persons to testify, and that such comment is reversible error, which cannot be cured by the instructions of the court, nevertheless it seems that under the weight of authority the rule does not apply if the statements of the attorney prosecuting are in legitimate reply to remarks made by the defendant or his counsel. Under a statute providing that the failure of the defendant to testify shall not be taken as a circumstance against him, nor be alluded to nor commented upon by counsel in the cause, it was deemed that any comment on the part of the state regarding his omission to appear as a witness, and even if in reply to statements of his counsel, was ground for a new trial, and that the error could not be cured by the instructions of the court. (*Hunt* v. *State,* 28 Tex. App. 149, 12 S. W. 737, 19 Am. St. Rep. 815.)

The cases do not generally go so far, even under enactments more stringent than ours. In Ohio, under a statute providing that the defendant's "neglect or refusal to testify shall not create any presumption against him, nor shall any reference be made to, nor any comment upon such neglect or refusal," it appeared "that on the trial of the case in the court below, after the close of the evidence, and while the counsel for the state was arguing the case to the jury, and commenting on what he claimed to have been established as matter of fact, the prisoner interrupted him by speaking out and asserting the fact to be otherwise. Whereupon the counsel turned to him and said in the hearing of the jury: 'Mr. Calkins, you had an opportunity to testify in this case, and did not do so.'" The retort, having been provoked, was held not to be error. (*Calkins* v. *State,* 18 Ohio St. 372, 98 Am. Dec. 121.)

In *State* v. *Balch* (Kan.) 2 Pac. 611, the court stated: "It must be remembered that this statement of the county attorney was not provoked or called forth by anything said by the defendant or his counsel; nor was it said incidentally in some argument addressed to the court." In *Parker* v. *State* (Tex. Cr. App.) 45 S. W. 812: "We hold 'that, when appellant brings this matter to the attention of the jury, he cannot complain if the state, in reply, remarks upon his suggestion." *State* v. *Hyland*, 144 Mo. 302, 46 S. W. 195: "He had no right to inject that issue into the argument and complain if it was promptly met and refuted." (*Barkman* v. *State* (Tex. Cr. App.) 52 S. W. 73; *Crumpton* v. *U. S.*, 138 U. S. 364, 11 Sup. Ct. 355, 34 L. Ed. 958; *Moore* v. *State* (Tex. Cr. App.) 28 S. W. 686; *State* v. *Glave*, 51 Kan. 330, 33 Pac. 8; *Baker* v. *State*, 69 Wis. 32, 33 N W. 52; *State* v. *Potts*, 83 Iowa, 317, 49 N. W. 845.) In *Siberry* v. *State*, 133 Ind. 677, 33 N. E. 681, it was held that "where, in a criminal action, counsel for the defendant steps outside the bounds of legitimate argument, and discusses matters not proper to be considered, the defense is in no position to complain if counsel for the state follow them without such bounds and reply to such argument, although discussion ought to be confined to matters properly within the case." At page 582 of 12 Cyc. it is said that remarks of the prosecuting attorney which ordinarily would be improper are not ground for exception, if they are provoked by defendant's counsel and are in reply to his statements; and a long list of cases in support of this text is given in note 26, and in 14 Cent. Dig. at section 1881, and at page 671 of 46 L. R. A.

There is another reason why the comments of the attorney for the state are not ground for reversal. If they were admittedly improper, the case ought not to be remanded on errors and technicalities which could not have injured the defendant. He was recognized on the fatal night by Townsend, Waldman, and the deceased at the time he and the others indicted with him robbed them. He was traced with the others by the Mexican coins taken from Townsend. The evidence, direct and circumstantial, showing their guilt, was clear, conclusive, and uncontradicted. His only witness, a

physician and surgeon, did not refute any of the pertinent facts. Regardless of the impropriety of the remarks of the attorney for the state, there could be no doubt of his guilt and no opportunity for the jury to find any verdict, except the one of murder in the first degree. The result would have been the same, and consequently there was no injury to the accused. If there had been a substantial conflict in the evidence, or any uncertainty regarding the case proved by the state, a doubt might arise in favor of the defendant as to whether the jury had been prejudiced or influenced in finding the verdict by these comments; but the undisputed facts point so conclusively to the guilt of the prisoner that they could not have arrived at a different conclusion. Under such circumstances neither reason nor justice demands a reversal of the case and the incurrence of the delay and expense of a new trial.

In *Wilson* v. *U. S.,* 149 U. S. 70, 13 Sup. Ct. 768, 37 L. Ed. 650, the supreme court, quoting from the decision in *Austin* v. *People,* 102 Ill. 264, said: "We do not see how this statute can be completely enforced unless it be adopted as a rule of practice that such improper and forbidden reference by counsel for the prosecution shall be regarded good ground for a new trial in all cases where the proofs of guilt are not so clear and conclusive that the court can say affirmatively the accused could not have been harmed from that cause." The criminal code of Illinois provided that the "neglect of the defendant to testify should not create any presumption against him, nor should the court permit any reference or comment to be made to or upon such neglect."

The difference in our statute leaves room for a distinction, and for the exception we have noted in regard to remarks in reply to statements made by the defendant or his attorney. In *State* v. *Ahern,* 54 Minn. 197, 55 N. W. 960, the court stated: "The county attorney commented upon the fact that the defendant had not testified in his own behalf. This is admitted on the part of the state to have been error. It was a violation of an express provision of the statute passed for the protection of defendants in criminal cases. But it was harmless in this case, from the fact that the evidence so con-

clusively showed the defendant's guilt that the jury could not have returned a verdict for the defendant without wilfully disregarding their duty, and it is not to be supposed that they would have done that. The evidence on the part of the state was complete, positive, and uncontradicted, and nothing appears to raise a doubt as to its credibility. It is unreasonable to suppose that the result might have been different if counsel had not made the improper remark referred to.

In a recent case, *People* v. *McRoberts* (Cal.) 81 Pac. 735, certain statements of the district attorney were held to be a gross and reprehensible violation of duty, but the court said: "The question remains, should the judgment be set aside for this misconduct? The homicide was admitted, and the evidence was such as to make it reasonably certain that the jury was not misled by the misconduct of the district attorney to return a verdict which they otherwise would not have found." And again, in *Patterson* v. *Hawley*, 33 Neb. 445, 50 N. W. 326: "All appeals to the jury upon matters outside of the case tend to defeat the true administration of justice, and any statement of an alleged fact outside of the evidence prejudicial to one of the parties may be sufficient to cause a reversal of the judgment. A court of justice does not condemn unheard, nor upon *ex parte* statements of opposing counsel, and it will not permit one of its officers to abuse his position by such unauthorized statements. We are satisfied, however, that the verdict in this case is the only one that the jury should have returned under the evidence, and the error will be disregarded." (*State* v. *Shawn*, 40 W. Va. 11, 20 S. E. 873, and cases cited; also note in *People* v. *Fielding*, 46 L. R. A. 672; *State* v. *Zumbunson*, 86 Mo. 111; Thompson on Trials, 960.)

The judgment and order are affirmed, and the district court will fix a time for having its sentence of death carried into effect.